Steven L. Yarmy, Esq.
Nevada Bar No. 8733
7464 W Sahara Ave, STE 8
Las Vegas, Nevada 89117
(702) 586-3513
(702) 586-3690 FAX
sly@stevenyarmylaw.com
*Attorney for the Debtor*
*And Debtor-in-Possession*

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: 23-11321-MKN |
| | Chapter 11 |
| SYNTHESIS INDUSTRIAL HOLDINGS 1 LLC, | **Hearing Date:** August 23, 2023 |
| | **Hearing Time:** 9:30 AM |
| Debtor, | **Location:** 300 Las Vegas Blvd South, 3rd Floor, Courtroom 2, Las Vegas, Nevada |
| | **Judge:** Honorable Judge Mike K. Nakagawa |

## <u>AMENDED FIRST PLAN OF REORGANIZATION</u>

SYNTHESIS INDUSTRIAL HOLDINGS 1 LLC ("*Debtor*") proposes this Amended First Plan of Reorganization (the "*Plan*") for the resolution of Debtor's outstanding Claims against it and its property (as these terms are defined herein). All Creditors, Equity Security Holders (as both terms are defined herein), and other parties-in-interest should refer to the Disclosure Statement (as this term is defined herein) for a discussion of Debtors history, assets, historical financial data, and for a summary and analysis of this Plan and certain related matters. All Holders of Claims against the Debtor are encouraged to read this Plan, the Disclosure Statement, and the related solicitation materials in their entirety before voting to accept or reject this Plan.

Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Article 11 to this Plan, Debtor expressly reserves the right to alter, amend, strike, withdraw, or modify this Plan one or more times before its substantial consummation.

## DISCLAIMER

Reference is made to the Disclosure Statement accompanying this Plan, including the exhibits appended thereto, for a discussion of Debtors history, business, results of operations and properties, and brief summary and detailed analysis of this Plan. All creditors are encouraged to consult the Disclosure Statement and to read this Plan carefully and completely before voting to accept or reject this Plan.

THIS PLAN AND THE ACCOMPANYING DISCLOSURE STATEMENT AND EXHIBITS APPENDED THERETO REMAIN SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND HAVE NOT BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.

## ARTICLE 1

### DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

**A.    Definitions.**

For the purposes of this Plan and the accompanying Disclosure Statement, the following terms (which appear herein as capitalized terms) shall have the respective meanings as hereinafter set forth; such meanings to be equally applicable to the singular and the plural forms of the terms defined, unless the context otherwise requires. Capitalized terms used in this Plan at all times shall refer to terms defined in this Article I, or, if not defined in this Article I, then as defined in any other section of this Plan. Capitalized terms used but not immediately defined in this Plan shall have the meanings ascribed to them later in this Plan. Unless otherwise provided in this Plan, all terms used herein shall have the meaning assigned to them under the Bankruptcy Code or Bankruptcy Rules. The rules of construction applicable to the Bankruptcy Code and the Bankruptcy Rules shall be applicable to this Plan.

**1.1**    "1111(b) Election" means an election made by a Secured Lender, pursuant to Bankruptcy Code section 1111(b), to have its entire Allowed Claim treated as secured in accordance therewith.

**1.2**    "Administrative Claim" means a Claim for costs and expenses of administration, pursuant to Bankruptcy Code sections 503(b), 507(a)(2) or 507(b), including: (a) the actual and necessary costs and expenses incurred after the Petition Dates and through the Effective Date of preserving the Estates and operating the businesses of Debtor (such as wages, salaries, or commissions for services, and payments for goods and services); (b) compensation and reimbursement of expenses for legal, financial advisory, accounting, and other services, including but not limited to, Allowed Professional Fees, pursuant to Bankruptcy Code sections 328, 330(a), or 331 or otherwise for the period commencing on the Petition Date and ending on the Effective Date; (c) all fees and charges assessed against the Estates, pursuant to chapter 123 of the Judicial Code and 28 U.S.C. § 1930; and (d) all Bankruptcy Court approved requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Case, pursuant to Bankruptcy Code sections 503(b)(3), (4), and (5).

**1.3**    "Allowed" means, with reference to any Claim, Equity Interest or Interest and with respect to the Debtor: (a) any Claim against or Interest in the Debtor that has been listed by the Debtor in its Schedules, as such Schedules may be amended by Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim or Interest has been Filed; (b) any Claim or Interest allowed (i) under this Plan, (ii) by Final Order, or (iii) as to which the liability of the Debtor and the amount thereof are determined by a final order of a court of competent jurisdiction other than the Bankruptcy Court; or

(c) as to which a Proof of Claim has been timely Filed in a liquidated amount with the Bankruptcy Court, pursuant to the Bankruptcy Code or any order of the Bankruptcy Court, or has been Filed with leave of the Bankruptcy Court after notice and a hearing, provided that no objection to the allowance of such Claim or motion to expunge such Claim has been interposed by any party in interest before any final date for the filing of such objections or motions set forth in this Plan, the Confirmation Order or other order of the Bankruptcy Court. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any valid and enforceable Claim that the Debtor may hold against the Holder thereof, to the extent such Claim may be validly offset, recouped, or otherwise reduced under applicable law.

**1.4** "Assets" means all of the assets, property (including the Properties), interests, and effects, Cash, receivables, real and personal, tangible and intangible, wherever situated, of the Debtor, as they existed on the Effective Date or thereafter, including: (a) executory contracts and unexpired leases; (b) all of the Debtor's other non-Cash property and assets, including all of the Causes of Action; and (c) any interest in any security deposit held on the Effective Date.

**1.5** "Avoidance Actions" means any actions commenced, or that may be commenced before or after the Effective Date, pursuant to Bankruptcy Code sections 544, 545, 547, 548, 550 or 551.

**1.6** "Ballot" means the form of ballot or ballots that will be distributed with the Disclosure Statement to Holders of Claims entitled to vote under this Plan in connection with the solicitation of acceptances of this Plan.

**1.7** "Bankruptcy Code" means Title 11 of the United States Code, as amended from time to time, as applicable to this Chapter 11 Case.

**1.8** "Bankruptcy Court" means the United States Bankruptcy Court for the District of Nevada having jurisdiction over the Chapter 11 Case and, to the extent of the withdrawal of any reference under Section 157 of Title 28 of the United States Code and/or the General Order of the United States District Court for the District of Nevada pursuant to Section 151 of Title 28 of the United States Code, the United States District Court for the District of Nevada.

**1.9** "Bankruptcy Rules" means collectively, the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075 and the general, local, and chamber rules of the Bankruptcy Court as applicable to the Chapter 11 Case, as now in effect or hereinafter amended.

**1.10** "Bar Date" means August 2, 2023, the date established by the Bankruptcy Court by which non-governmental Creditors were required to file proofs of claim with respect to pre-petition Claims including Claims asserted, pursuant to Bankruptcy Code section 503(b)(9), except with respect to Administrative Claims, Claims arising from the rejection of any executory contracts and unexpired leases, and Claims that were scheduled by the Debtor as undisputed, non-contingent, and unliquidated;

and October 2, 2023, by which governmental Creditors were required to file proofs of claim with respect to pre-petition Claims, including but not limited to Priority Tax Claims. *See* ECF No. 4. If a Plan is confirmed before the Bar Date, the Bar Date shall be the date of entry of the confirmation order.

**1.11**    "Business Day" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)) and with regard to Bankruptcy Rule 9006(c) in Nevada.

**1.12**    "Cash" means legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, negotiable instruments, wire transfers of immediately available funds, or other cash equivalents.

**1.13**    "Cash Collateral Orders" means any and all interim and final orders entered by the Bankruptcy Court, which permitted the Debtor to use the cash collateral of any of the Secured Lenders.

**1.14**    "Causes of Action" means any Claim, Avoidance Action, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

**1.15**    "Chapter 11 Case" means the case under Chapter 11 of the Bankruptcy Code involving Debtors, having case number 23-11321-MKN, including all adversary proceedings pending in connection therewith.

**1.16**    "Claim" has the meaning of any right to payment from Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured arising at any time before the Effective Date or relating to any event that occurred before the Effective Date, or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.
set forth in Bankruptcy Code section 101(5).

**1.17**    "Claim Objection Deadline" means five (5) years from the Effective Date for all Claims, except for Claims for which a specific objection deadline has been set forth elsewhere in this Plan.

**1.18**    "Claims Register" means the official register of Claims and Interests maintained by the Debtor.

**1.19**    "Class" means a class of Holders of Claims or Interests as described in Article 2, 3 & 4 of the

Plan.

**1.20**  "Collateral" means all the collateral as described in the Loan Documents.

**1.21**  "Confirmation" means the entry by the Bankruptcy Court of the Confirmation Order.

**1.22**  "Confirmation Date" means the date upon which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

**1.23**  "Confirmation Funds" means all funds required to be disbursed, or deposited and held for later disbursement upon allowance or other Bankruptcy Court authorization, on or as of the Effective Date (i) to Holders Allowed Administrative Claims and Allowed Priority Claims, Allowed Professional Fee Claims, to be paid in Cash on the Effective Date, any Allowed Priority Tax Claims other than Priority Tax Claims to be paid in deferred payments pursuant to this Plan, (ii) to the U.S. Trustee for US Trustee Fees due as of the Effective Date and (iii) for any other Distributions and payment of costs and expenses in connection with consummating the Plan.

**1.24**  "Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to Bankruptcy Code section 1129, as such hearing may be adjourned or continued from time to time.

**1.25**  "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan in accordance with the Bankruptcy Code, which shall be in form and substance reasonably acceptable to the Proponents.

**1.26**  "Contingent Claim" means a Claim which is contingent, unmatured, or unliquidated on or immediately before the Confirmation Date.

**1.27**  "Creditor" means a Holder of a Claim.

**1.28**  "Cure Amount" means the payment of Cash or the Distribution of other property and the performance of any other obligations as the parties may agree or that the Bankruptcy Court may order necessary to cure defaults as required under section 365(a) of the Bankruptcy Code in order for the Debtor to assume, or to assume and assign, Executory Contracts pursuant to section 365(a) of the Bankruptcy Code, or pursuant to this Plan under section 1123(b) of the Bankruptcy Code.

**1.29**  "Debtor" means SYNTHESIS INDUSTRIAL HOLDINGS 1 LLC, the debtors and debtors-in-possession in the Chapter 11 Case pursuant to Section 1108 of the Bankruptcy Code.

**1.30**  "Debtor in Possession" means the Debtor, as debtor in possession in the Chapter 11 Case, pursuant to Bankruptcy Code sections 1107 and 1108.

**1.31** "Deed of Trust" means any Deed of Trust with or without Assignment of Rents (as amended, supplemented, or otherwise modified from time to time) between Debtor(s), as borrower, in favor of Secured Lender, as lender, recorded with the County Recorder securing such indebtedness of the Debtor(s).

**1.32** "Deficiency Claim" means the Claim of any Secured Lender which does not make the 1111(b) Election, which is Allowed as a General Unsecured Claim, which amount shall equal the difference between such Secured Lender's Allowed Claim and the Property Value of the Property which secures such Secured Lender's Claim.

**1.33** "Disallowed Claim" means any Claim or portion thereof that has been disallowed by a Final Order of the Bankruptcy Court.

**1.34** "Disclosure Statement" means the disclosure statement that relates to this Plan, as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto, describing this Plan that is prepared and distributed in accordance with, among others, Sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law.

**1.35** "Disposable Monthly Income" means after all the Debtors monthly expenses the amount left remaining to pay unsecured creditors, which is estimated to be $1,100.00.

**1.36** "Disputed Claim" means: A Claim which is: (i) subject to timely objection interposed by Debtor(s), Reorganized Debtor(s), or any party-in-interest entitled to file and prosecute such objection in the Chapter 11 Case, if at such time such objection remains unresolved; or (ii) a Claim that is listed by Debtor as disputed, unliquidated, or contingent in the Schedules; provided, however, that the Bankruptcy Court may estimate a *Disputed* Claim for purposes of allowance pursuant to Section 502(c) of the Bankruptcy Code. The term "Disputed," when used to modify a reference in this Plan to any Claim or Class of Claims or Equity Security, shall mean a Claim or Equity Security (or any Claim or Equity Security in such Class) that is a Disputed Claim or Disputed Equity Security as defined herein. In the event there is a dispute as to classification or priority of a Claim or Equity Security, it shall be considered a Disputed Claim or Disputed Equity Security in its entirety. Until such time as a Contingent Claim becomes fixed and absolute, such Claim shall be treated as a Disputed Claim and not an Allowed Claim for purposes related to allocations and distributions under this Plan.

**1.37** "Distributable Assets" mean the assets distributable to Allowed Claims and unclassified Claims in accordance with the Plan by Reorganized Debtor(s).

**1.38** "Distribution" means any distribution made by the Distribution Agent, the Debtor(s) or Reorganized Debtor(s) of Distributable Assets to the Holders of Allowed Claims or Equity Securities as of the Record Date pursuant to or under the Plan.

**1.39** "Distribution Agent" means the Reorganized Debtor, or the Person or Entity chosen by the

Reorganized Debtor to make or to facilitate Distributions pursuant to this Plan.

**1.40** "Distribution Record Date" means the Confirmation Date unless the Bankruptcy Court establishes a different date for the Distribution Record Date in the Confirmation Order.

**1.41** "Effective Date" means 14 days following the date of the entry of the order confirming the Plan. But if a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which no stay of the confirmation order is in effect provided that the confirmation order has not been vacated.

**1.42** "Entity" has the meaning as set forth in Bankruptcy Code section 101(15).

**1.43** "Estate" means, the estates of the Debtor that were created by the commencement of the Chapter 11 Case pursuant to Bankruptcy Code section 541, and shall be deemed to include any and all privileges and incorporeal hereditaments of the Debtor and any and all interests in property, whether real, personal or mixed, rights, Causes of Action, avoidance powers or extensions of time that the Debtor or the estates shall have had effective as of the Petition Date or thereafter, whether by virtue of Bankruptcy Code sections 544, 545, 546, 547, 548, 549 or 550 or otherwise.

**1.44** "Equity Interest" means the same as "Interest."

**1.45** "Executory Contract" means an executory contract or unexpired lease of the Debtor that may be subject to assumption, assumption and assignment, or rejection under sections 365 or 1123 of the Bankruptcy Code.

**1.46** "File" means to file with the Bankruptcy Court in the Chapter 11 Case.

**1.47** "Final Decree" means an order of the Bankruptcy Court closing the Chapter 11 Case pursuant to Bankruptcy Code section 350, which in this case the Debtor shall be allowed to file an Ex Parte Motion for Final Decree after it makes its first distribution payment.

**1.48** "Final Distribution" means on the Final Distribution Date, Cash in an amount not greater than $5,944.81 that, after deducting all prior Distributions tendered on account of the Allowed General Unsecured Claims, and amounts that are priority administrative claims is sufficient to pay in full the outstanding balance of the Allowed General Unsecured Claims in their pro rata share, which in this case is $5,944.81.

**1.49** "Final Distribution Date" means the Business Day on which the Final Distribution is made or 6 months after the Effective Date.

**1.50** "Final Order" means an order or judgment entered by the Bankruptcy Court or a court of competent jurisdiction that has not been: (a) that has not been reversed, stayed, modified, amended,

revoked, varied or set aside. Notwithstanding the foregoing, the Confirmation Order shall specifically become a Final Order on the first Business Day that is fourteen (14) days after the entry of such Confirmation Order unless any appeal of such Confirmation Order was accompanied by a stay pending appeal.

**1.51** "General Unsecured Claims" means all the Claims against the Debtor, including Deficiency Claims of Secured Lenders who did not make the 1111(b) Election, and Claims resulting from rejection of executory contracts and unexpired leases, that are not Secured, Administrative, or Priority Claims, and that are not subject to subordination by agreement or otherwise. General Unsecured Claims shall also include all Claims arising under Section 502(g) of the Bankruptcy Code.

**1.52** "Holder" means any Person or Entity that is the owner of a Claim or Interest in the Chapter 11 Case.

**1.53** "Impaired" means with respect to any Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of Bankruptcy Code section 1124.

**1.54** "Interest" means any: (i) any equity or other ownership interest in any Person or Entity, including, but not limited to, all issued and outstanding or reserved for issuance, common stock, preferred stock, membership interests, warrants, options, or other ownership rights or rights to purchase or receive additional shares of stock or membership interests in any Person or Entity, and/or any other instrument or document to the extent that it directly or indirectly evidences, creates or reserves any equity or ownership interest in any Person or Entity giving rise to any Claim or Interest, (ii) equity security, including all membership interests together with any warrants, options, or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto and (iii) partnership, limited liability company or similar interest.

**1.55** "Initial Distribution Amount" means the sum of $173,845.71 contributed by the Members of the Debtor.

**1.56** "Initial Distribution Date" means within 180 days following the Effective Date.

**1.57** "Lien" has the meaning set forth in Bankruptcy Code section 101(37).

**1.58** "Litigation Claims" means all rights, claims, torts, liens, liabilities, obligations, actions, causes of action, Avoidance Actions, derivative actions, proceedings, debts, contracts, judgments, damages and demands whatsoever in law or in equity, whether known or unknown, contingent or otherwise, that Debtor or the Estate may have against any Person, including but not limited to, those listed on Schedules hereto. Failure to list a Litigation Claim on Schedules shall not constitute a waiver or release by Debtor(s) or Reorganized Debtor(s) of such Litigation Claim.

**1.59** "Loan Documents" means collectively, the Secured Loan Agreement, the Secured Note, the

Deed of Trust, and any and all other amendments, supplements, or modification to the foregoing, as well as all additional documents pertaining thereto.

**1.60**    "Nevada Secretary" means the Secretary of State of the State of Nevada.

**1.61**    "Notice of Confirmation" means that certain notice, pursuant to Bankruptcy Rule 3020(c)(2), notifying Holders of Claims and Interests that the Bankruptcy Court has confirmed this Plan.

**1.62**    "NRS" means the Nevada Revised Statutes, as amended from time to time.

**1.63**    "Other Secured Claims" means any Secured Claim other than a Claim with respect to a Secured Loan.

**1.64**    "Permitted Encumbrances" means (i) Liens for *ad valorem* taxes not yet due and payable, (ii) easements, restrictions, conditions and limitations of record that affected the title to the Properties as of the Petition Date, (iii) any Liens securing Other Secured Claims that are reinstated or assumed by Reorganized Debtor, and (iv) as such term is defined in the Refinanced Secured Loan Documents.

**1.65**    "Person" means any individual, corporation, partnership, limited liability company, joint venture, association, trust or organization, or other "person" as defined in Bankruptcy Code section 101(41), as well as any governmental agency, governmental unit or political subdivision.

**1.66**    "Petition Date" means April 4, 2023, the date on which a voluntary Chapter 11 petition was filed by the Debtors, thereby commencing the Chapter 11 Case.

**1.67**    "Plan" means this Chapter 11 Plan of Reorganization, including all documents referenced herein and all exhibits, supplements, appendices and schedules hereto or thereto, including the Plan Supplement, either in its present form or as the same may be altered, amended or modified from time to time pursuant to the Bankruptcy Code or Final Order.

**1.68**    "Plan Payment" means the Debtor(s) projected monthly disposable income payment which is paid on a quarterly basis during the Plan Term. And shall terminate after 15 months beginning on the Effective Date or after four (4) quarterly payments have been tendered.

**1.69**    "Plan Term" means a period of 6 months beginning on the Effective Date.

**1.70**    "Post Confirmation" means the period of time after the entry of the Confirmation Order.

**1.71**    "Post Effective Date Fees" means the reasonable fees and expenses of Proponent's Professionals incurred by the Proponents and/or Reorganized Debtor after the Effective Date, including those fees and expenses incurred for legal, financial advisory, accounting and other services rendered in connection with the implementation, consummation and performance of the Plan and

which are necessary to complete the administration of, conclude and close the Chapter 11 Case.

**1.72** "Priority Claim" means a Claim entitled to priority under Bankruptcy Code sections 507(a)(3) through (7).

**1.73** "Priority Tax Claims" means any Claim that is entitled to priority under section 502(i) or Bankruptcy Code section 507(a)(8). Priority Tax Claims do not include *ad valorem* tax Claims if such Claims under applicable state law are Secured by a Lien on Debtor's Assets.

**1.74** "Priority Unsecured Claims" means any and all Claims accorded priority in right of payment under Section 507(a) of the Bankruptcy Code.

**1.75** "Professional" means a Person or Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with Bankruptcy Code sections 327 or 1103 and to be compensated for services rendered prior to or on the Effective Date, pursuant to Bankruptcy Code sections 327, 328, 329, 330, or 331; or (b) awarded compensation and reimbursement by the Bankruptcy Court, pursuant to Bankruptcy Code section 503(b)(4).

**1.76** "Professional Fees" means all reasonable fees and expenses incurred by Professionals and allowed by the Bankruptcy Court.

**1.77** "Professional Fee Claim" means any Claim for compensation or reimbursement of fees and expenses as may be requested by a Professional to the extent such Professional is required to apply to the Bankruptcy Court for payment of such Claim pursuant to Bankruptcy Code sections 326, 328, 330 or 331 and the terms of this Plan.

**1.78** "Proof of Claim" means a proof of Claim Filed against Debtor in the Chapter 11 Case.

**1.79** "Properties" means, collectively, all real estate and Rents thereof owned by the Debtor and listed on the Debtor's Schedules, as amended or modified.

**1.80** "Properties' Value" means the aggregate going concern value of the Properties, as determined by the Bankruptcy Court or through stipulation between the Proponents and the Debtor's respective lenders, which value must be consistent with the economics of this Plan.

**1.81** "Property" means any one of the Properties, together with its Rents.

**1.82** "Property Value" means, for any Property, its going concern value, as determined by the Bankruptcy Court or through stipulation between the Proponents and the Secured Lender holding a Lien on such Property, which value must be consistent with the economics of this Plan.

**1.83** "Proponents" means the Debtor, as proponents of this Plan.

**1.84** "Pro Rata" means, with respect to an amount of Cash or other consideration to be paid or distributed on a particular date to a Holder of an Allowed Claim, that such Distribution shall be made in accordance with the ratio, as of such date, of the amount such Allowed Claim is to the aggregate of the amounts of Claims in the Class to which such Allowed Claim belongs.

**1.85** "Quarterly Plan Payment" means the sum of one single payment to general unsecured creditors claims in the amount of $5,944.81, within 6 months after the Effective Date.

**1.86** "Rejected Contract" means any expired lease or contract, or any unexpired lease or executory contract that has been rejected prior to Confirmation, or is the subject of a pending motion for rejection or has been designated in the Plan Supplement (or in any other contract, instrument, stipulation, settlement, release, or other agreement or document entered into in connection with this Plan) as a contract or lease that is not to be an Assumed Contract, or is otherwise rejected pursuant to the this Plan.

**1.87** "Released Liabilities" means, with respect to a given Releasor, all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities based on any act, omission, transaction, event or other occurrence (other than rights to enforce the terms of this Plan or any related document or agreement), whether known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that arose prior to the Effective Date and relate to the Debtor, the Proponents, this Plan, the Chapter 11 Case, which could have been asserted by such Releasor (or on behalf of Debtor or their Estates) against any Releasee or any of its Representatives.

**1.88** "Releasees" means each of the Debtor, the Distribution Agent, Reorganized Debtor, the Proponents and any current shareholders, subsidiaries, partners, members or affiliates of the aforementioned Persons and any of their respective Representatives.

**1.89** "Releasors" means each of the Debtor, the Distribution Agent, Reorganized Debtor, the Proponents and any current shareholders, subsidiaries, partners, members or affiliates of the aforementioned Persons and any of their Representatives.

**1.90** "Rents" means, with respect to a Property, such Property's rents, earnings, income, profits, benefits and advantages arising from such Property, if any, as set forth in the deed of trust and/or assignment of rents securing any Secured Loan with respect to such Property.

**1.91** "Reorganized Debtor" means, on or after the Effective Date, the Debtors in this Case.

**1.92** "Reorganized Debtor Operating Agreement" means the amended and restated agreements that will govern the Reorganized Debtor as of the Effective Date, the form of which is attached to the Plan Supplement, if any.

**1.93** "Representatives" means, with respect to a given Person or Entity, its past and current directors, officers, shareholders, members, partners, employees, agents, attorneys, professionals, advisors, trustees, consultants, accountants, contractors and other representatives.

**1.94** "Schedules" means the schedules of Assets and liabilities, the list of Holders of Interests and the statements of financial affairs Filed by the Debtor under Bankruptcy Code section 521 and Bankruptcy Rule 1007, and all amendments and modifications thereto through the Confirmation Date.

**1.95** "Secured" means when referring to a Claim: (a) secured by a Lien on property in which the Estates have an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in the Estates' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to this Plan as a secured Claim.

**1.96** "Secured Lenders" means, collectively, all lenders holding Liens on Debtors real property and Rents thereof to secure their Claims as set forth in Debtors Schedules, as amended or modified, including: the holders of secured claims identified in Classes 1 through 28, and any respective other Persons or Entities holding Claims with respect to each Secured Loan held by each of the Secured Lenders and any permitted assignee or other transferee thereof, each individually, a "Secured Lender."

**1.97** "Secured Lender Claim(s)" means the allowed amount of such lenders claim(s) under section 506(a) of the Bankruptcy Code.

**1.98** "Secured Loan" means a loan held by a Secured Lender which is Secured by a Property.

**1.99** "Secured Note Deduction" means, for each Property and the Secured Lender's Claim secured by a Lien on such Property, an amount equal to (i) the amount of any Claims secured by a Lien on the subject Property which is senior in priority to the Lien held by the Secured Lender on the said Property, plus (ii) any post-petition amounts paid to a Secured Lender as adequate protection or otherwise to the extent there was no diminution in value of its interest in the subject Property during the Chapter 11 Case, plus (iii) any amounts the Bankruptcy Court determines, at the Confirmation Hearing, should be surcharged to the Property or the Secured Lender pursuant to Bankruptcy Code section 506(c).

**1.100** "Security Deposits" means the security deposits received from tenants of the Properties.

**1.101** "Senior Liens" means any Liens on a Property that are senior in priority or by operation of law to the Lien held by a Secured Lender on that Property including, without limitation, any valid real estate tax Liens that are senior to the Liens of such Secured Lender.

**1.102** "Taxes" means all income, gaming, franchise, excise, sales, use, employment, withholding, property, payroll, or other taxes, assessments of governmental charges, together with any interest penalties, additions to tax, fines, and similar amounts relating thereto, whether or not yet assessed or imposed, collected by, or due to any federal, state, local or foreign governmental authority.

**1.103** "Unclassified Claims" means Administrative Claims and Priority Tax Claims.

**1.104** "Unexpired Lease" means a lease of non-residential real property to which Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

**1.105** "Unsecured Claim" means a Claim that is not secured by a pledge of or security interest in any of the Debtors' property.

**1.106** "US Trustee Fees" means fees payable pursuant to 28 U.S.C. § 1930.

**1.107** "Voting Deadline" means the deadline established by the Bankruptcy Court by which all Impaired Classes must submit their ballot indicating acceptance or rejection of this Plan.

**B.    Rules of Interpretation.**

For purposes of this Plan only: (i) any reference in this Plan to a contract, instrument, release, or other agreement or documents being in particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (ii) any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (iii) unless otherwise specified, all references in this Plan to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to this Plan; (iv) the words "herein," "hereof," "hereto," and "hereunder" refer to this Plan in its entirety rather than to a particular portion of this Plan; (v) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; and (vi) the rules of construction and definitions set forth in Sections 101 and 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply unless otherwise expressly provided.

**C.    Computation of Time.**

In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE 2

## TREATMENT OF UNCLASSIFIED CLAIMS

**2.1. General.** (a) All Claims and Interests, except Administrative Claims (other than Professional Fee Claims, if any) and Priority Tax Claims, are placed in the Classes set forth below. In accordance with Bankruptcy Code section 1123(a)(1). Administrative Claims and Priority Tax Claims, as described

below, have not been classified.

(b) A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date. The treatment of the Claims set forth below is consistent with the requirements of Section 1129(a)(9)(A) of the Bankruptcy Code.

**2.2. Treatment of Administrative Claims.** Each Allowed Administrative Claim shall be paid by Reorganized Debtor (or otherwise satisfied in accordance with its terms) upon the latest of: (i) the Effective Date or as soon thereafter as is practicable; (ii) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (iii) the fourteenth (14th) Business Day after such Claim is Allowed, or as soon thereafter as practicable; and (iv) such date as the Holder of such Claim and Reorganized Debtor shall agree upon.

Notwithstanding anything to the contrary in the Plan or in the Order confirming the Plan, a governmental unit shall not be required to a file a request for payment of an expense described in Bankruptcy Code § 503(b)(1)(B) or (C) as a condition of its being an allowed administrative expense, and Debtor shall pay in full all such allowed administrative expenses, including any interest thereon, when due.

**2.3. Priority/Secured Tax Claims.** The legal and equitable rights of the Holders of Priority Tax Claims are unaltered by this Plan. Each Holder of an Allowed Priority Tax Claim shall, subject to Section 7.09 hereof and at the Reorganized Debtors option, either:

(1) from the Confirmation Funds, be paid the Allowed amount of such Claim in Cash on the Effective Date,

(2) have such Claim assumed by Reorganized Debtor, to be paid by Reorganized Debtor in Cash in the Allowed amount of any such Claim on the date on which such Claim is payable under applicable law or any agreement relating thereto; or

(3) receive such other treatment as is agreed by the Holder of the Allowed Priority Tax Claim and the Reorganized Debtor. Under the Plan, Holders of Allowed Priority Tax Claims against the Debtor shall not be entitled to any payments on account of any post-Petition Date interest or penalty with respect to or in connection with an Allowed Priority Tax Claim. Any such Claim or demand for any post-Petition Date interest or penalty will be discharged upon the entry of the Confirmation Order by Bankruptcy Code section 1141(d)(1), and the Allowed Priority Tax Claim Holder shall not assess or attempt to collect such accrued interest or penalty from the Debtor, the Reorganized Debtor, or their property.

**2.4. Payment Provisions.** Subject to the provisions of Bankruptcy Code sections 330(a), 331 and 503(b), each Holder of an Administrative Claim other than a Holder of a Professional Fee Claim shall, either:

(A) from the Confirmation Funds, be paid in Cash in the Allowed amount of any such Claim on, or as

soon as reasonably practicable after, the later of (i) the Effective Date, (ii) the date upon which such Administrative Claim becomes Allowed, or (iii) such date as is otherwise agreed by the Debtor and the Holder of such Claim; or

(B) have such Claim assumed by the Reorganized Debtor, to be paid by Reorganized Debtor in Cash in the Allowed amount of any such Claim on, or as soon as reasonably practicable after, the later of (i) the date upon which such Administrative Claim becomes Allowed, (ii) the date on which such Administrative Claim becomes due in the ordinary course of business, or (iii) such date as is otherwise agreed by the Reorganized Debtor and the Holder of such Claim.

**2.5. Professional Fee Claims and US Trustee Fees.** All Professional Fee Claims shall be fully and completely satisfied solely from the DIP account funds or pursuant such other terms as the Holder of such claim may agree. Upon receipt by all Professionals of their respective payments from the DIP account any and all Professional Fee Claims are hereby deemed fully satisfied, released, and discharged as to the Debtor and Reorganized Debtor. Notwithstanding anything contrary in the Plan, the Debtor will have outstanding professional fee claims estimated to be $10,000.00, which includes expenses.

(A) the Debtor shall pay, or cause to be paid, all accrued US Trustee Fees on or before the Effective Date of the Plan; and following the Effective Date, the Reorganized Debtor shall be responsible for timely payment of all US Trustee Fees until such time as the Final Decrees closing this Chapter 11 Case are entered and all US Trustee Fees due are paid in full.

(B) the Debtor or Reorganized Debtor (as applicable) shall File with the Bankruptcy Court and serve on the United States Trustee a quarterly financial report for each quarter (or portion thereof) that the Chapter 11 Case remains open in such format as reasonably may be required by the United States Trustee.

## ARTICLE 3

### DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS

Pursuant to this Plan and in accordance with Section 1123(a)(1) of the Bankruptcy Code, all Claims of Creditors and the Holders of Equity Securities (except unclassified claims) are placed in the Classes described below. A Claim or Equity Security is classified in a particular Class only to the extent that the Claim or Equity Security qualifies within the description of that Class and is classified in other Classes only to the extent that any remainder of the Claim or Equity Security qualifies within the description of such other Classes. A Claim or Equity Security is also classified in a particular Class only to the extent that such Claim or Equity Security is an Allowed Claim or Allowed Equity Security in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date. With respect to Classes of Claims described as Unimpaired under the Plan, except as otherwise provided under this Plan, nothing shall affect the rights and legal and equitable defenses of Debtor and Reorganized Debtor regarding such Claims classified as Unimpaired under this Plan, including but not limited to, all rights in respect of legal and equitable defenses to setoff or recoupment against such Claims.

**3.1 Summary of Classification**

| Class | Description | Treatment |
|---|---|---|
| Class 1 - 6 | Secured Claims – Real Property | Unimpaired/Impaired. Solicitation Required |
| Class 7 | General Unsecured Claims | Unimpaired. No Solicitation required. |
| Class 8 | Equity Interest | Unimpaired. No Solicitation required. |

## ARTICLE 4

### DESIGNATION OF AND PROVISIONS FOR
### TREATMENT OF CLASSES OF CLAIMS UNDER THIS PLAN

**4.1. Claims Against the Debtor and Debtor's Property.**

    **Class 1. Unimpaired.**

    This Class 1 claim consists of an unenforceable Secured Claim in favor of US Bank, NA, as Trustee for the RMAC Trust, Series 2016-CTT against the Debtor's rental property located at 11604 Azul Celeste Place, Las Vegas, Nevada 89138; APN: 137-35-416-061, which is secured by a First Deed of Trust recorded on May 3, 2007, as instrument number 20070503-0003454.

    (a) On the Effective Date, the Loan Documents shall remain in full force and effect, save and except that: (i) without any further action by Debtor, Reorganized Debtor, or Secured Lender, all of the Loan Documents shall be deemed to have been amended as follows; which will be effective on the Effective Date and will generally incorporate the terms of the Secured Note as modified as follows:

    (b) *Principal Balance.* The principal balance of the Class 1 claim shall be the Allowed Secured Lender Claim in the amount estimated to be $414,761.93.

        (i)    *Arrears*. Debtor will cure the arrears of approximately $173,845.71, with a payment of $173,845.71 on or before the effective date.

    (c) *Lien.* From and after the Confirmation Date, the Holder of the Class 1 Claim shall retain its Lien in the Collateral consistent with the applicable Loan Documents until the Class 1 claim is repaid in accordance with the Plan.

    (d) *Post-Effective Date Interest Rate.* Interest shall accrue on the Class 1 Holders Claim at an interest rate of 4.00% per annum under the loan documents. See proof of claim.

    (e) *Monthly Payments.*

        (i)    Beginning on the first of the month following the entry of the confirmation order or an Adequate Protection Order, and on the first day of each subsequent

- 16 -

month until paid. Payments of principal and interest on the Class 1 claim shall be delivered to lender in the amount of $1,463.31 per month until paid.

(f) *Maturity Date.* The unpaid balance of the Class 1 claim shall be due and payable on or before August 1, 2050.

(g) *Prepayment.* There shall be no penalty for prepayment for all or part of the Class 1 claim prior to the Maturity Date.

(h) *Property Taxes & Insurance.* In addition to the monthly principal and interest payment the Debtor shall be responsible for maintaining and paying taxes and insurance on the subject property. The Debtor rejects and shall not be responsible for any further mortgage insurance, if applicable. The debtor shall be responsible for any post-petition advances for property taxes and shall cure such amounts within 12 months after confirmation of the Debtor's Chapter 11 Plan.

(i) *Refinancing and Sale Options.* Prior to the Maturity Date, Reorganized Debtor shall have the absolute right to act as follows:

(i) Refinance; provided, however, that the proceeds of such refinancing loan are sufficient to pay the amount of the claim in paragraph (b) above, and are utilized to pay, all sums due and owing under the Class 1 claim at the time of closing of such refinancing minus any payments made, unless Secured Lender otherwise agrees; or

(ii) Sell the Real Property free and clear of Secured Lender's Liens; provided, however, that the proceeds of such sale are sufficient at the time of closing of such sale to pay, and are utilized to pay, all sums due and owing under the Class 1 claim in paragraph (b) minus any payments made, unless Secured Lender otherwise agrees. The Debtor may sell this property at any time after the confirmation order is entered, without approval from the Court. The Debtor may owner carry or finance at its discretion.

(j) *Default.* On the Effective Date, Payments are due on the first (1st) day of each month and are delinquent after the fifteenth (15th) day of each month.

(k) *Valuation.* The Class 1 Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the valuation of such property as set forth on paragraph (b) above of this Plan. The confirmation order approving the plan shall set forth the values of each secured creditors lien claims as of the effective date of the Plan. The value of this property is tax assessed at $441,294.00. The estimated fair market value, conditioned on an appraisal, is expected to be valued at $565,000.00, which is based on sales comparisons.

(l) *Unsecured Portion of the Claim*: Any amount of a Class 1 claim that is deemed to be unsecured in accordance with paragraph (b) above shall be afforded the treatment set forth in Class 7 below. Class 1 shall have an unsecured claim of $0.00.

If an 1111(b) election is made by Creditor, Debtor will tender the allowed amount of the claim at 0.00% interest in equal installments over 360 months.

**Impairment and Voting:** Class 1 is unimpaired. Holders of the Class 1 claim is not entitled to vote to

accept or reject this Plan.

**Class 2. Impaired.**

This Class 2 claim consists of a wholly unsecured Claim in Nevada Department of Taxation, Acct# 1014521378 against the Debtor's rental property located at 11604 Azul Celeste Place, Las Vegas, Nevada 89138; APN: 137-35-416-061, which are secured by wholly unsecured Tax Liens recorded on December 1, 2014, as instrument number 20141201-0001108, and on July 11, 2017, as instrument number 20170711-0001175.

(a) On the Effective Date, the liens shall not remain or have any force or effect against the debtor's property.

(b) *Principal Balance.* The principal balance of the Class 2 claim shall be the Allowed Claim in the amount of $0.00.

(c) *Lien.* From and after the Confirmation Date, the Holder of the Class 2 wholly unsecured Claim shall be fully released. Recording of the Confirmation Order shall suffice to release the Tax Liens in the real property records of Clark County, Nevada recorded on December 1, 2014, as instrument number 20141201-0001108, and on July 11, 2017, as instrument number 20170711-0001175.

(d) *Post-Effective Date Interest Rate.* Interest shall accrue on the Class 2 Holders Claim at an interest rate of 0.00%.

(e) *Valuation.* The Class 2 Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the valuation of such property as set forth in Class 1 of this Plan. The confirmation order approving the plan shall set forth the values of each secured creditors wholly unsecured junior lien claims as of the effective date of the Plan. The value of this property is tax assessed at $441,294.00. The estimated fair market value, conditioned on an appraisal, is expected to be valued at $565,000.00, which is based on sales comparisons.

(f) *Unsecured Portion of the Claim*: Any amount of a Class 2 wholly unsecured claim that is deemed to be unsecured in accordance with Class 1 above. The unsecured portion of this claim may be treated in Class 7 below if class 2 files a timely claim. Recording of the Confirmation Order shall suffice to release the tax liens in the real property records of Clark County, Nevada recorded on December 1, 2014, as instrument number 20141201-0001108, and on July 11, 2017, as instrument number 20170711-0001175. This claim is not enforceable against the Debtor because the Debtor is not responsible for this claim. Should the Class 2 claim holder fail to timely file a proof of claim, the class 3 claim/lien shall be released from the Class 1 property but will remain against the actual debtor.

***Impairment and Voting:*** Class 2 is impaired. Holders of the Class 2 claim are entitled to vote to accept or reject this Plan.

**Class 3. Impaired.**

This Class 3 claim consist of a Super-Priority Secured Claim in favor of *Summerlin West*

*Community Association*, (HOA Lien) against the Debtor's rental property located at 11604 Azul Celeste Place, Las Vegas, Nevada 89138; APN: 137-35-416-061, which is secured by a super-priority lien consisting of the last Nine (9) Months of HOA Dues as well as any "maintenance or nuisance-abatement charges.

(a) On the Effective Date, any Liens of the Class 3 holder shall be treated as a partially secured and the partially unsecured claim shall be reclassified to a General Unsecured Claim in Class 7 pursuant to sections 1123 and 506 of the Bankruptcy Code.

(b) *Valuation.* The Class 3 Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the valuation of such property as set forth in Class 1 above of this Plan. The confirmation order approving the plan shall set forth the values of each secured creditor's lien claims as of the effective date of the Plan. The estimated fair market value, conditioned on an appraisal, is expected to be valued at $565,000.00, which is based on sales comparisons.

(c) *Unsecured Portion of the Claim*: Any amount of a Class 3 claim that is deemed to be unsecured in accordance with Class 1 above shall be afforded the treatment set forth in Class 7 below, which shall be determined upon the filing of a timely proof of claim.

(d) *Principal Balance.* The principal balance of the Class 3 claim shall be the Allowed Secured Claim consisting of the last nine months of the HOA dues in the estimated amount of $495.00 ($55.00 x 9 months). The Debtor shall pay the allowed claim no later than 90 days after the entry of the confirmation order. Or such other amount as the court may determine.

(e) *Lien and Lien Release.* From and after the Confirmation Date, the Holder of the Class 3 Claim shall retain its Lien until it has received payment of $495.00 or the last nine months of dues. Upon the recording of the Order Confirming the Debtor's Plan shall be sufficient to release any HOA liens that have not been released. Should the class 3 claim holder fail to timely file a proof of claim, the class 3 claim holder shall not be entitled to any distributions and any prepetition lien shall be released.

**Impairment and Voting:** Class 3 is impaired. Holders of the Class 3 claim are entitled to vote to accept or reject this Plan.

**Class 4. Impaired.**

This Class 4 claim consist of a Super-Priority Secured Claim in favor of *Casa Rosa Homeowners Association*, (HOA Lien) against the Debtor's rental property located at 11604 Azul Celeste Place, Las Vegas, Nevada 89138; APN: 137-35-416-061, which is secured by a super-priority lien consisting of the last Nine (9) Months of HOA Dues as well as any "maintenance or nuisance-abatement charges.

(a) On the Effective Date, any liens of the Class 4 holder shall be treated as partially secured and the partially unsecured claim shall be reclassified to a General Unsecured Claim in Class 7 pursuant to sections 1123 and 506 of the Bankruptcy Code.

(b) *Valuation.* The Class 4 Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the valuation of such property as set forth in Class 1 above of this Plan.  The confirmation order approving the plan shall set forth the values of each secured creditors lien claims as of the effective date of the Plan. The estimated fair market value, conditioned on an appraisal, is expected to be valued at $565,000.00, which is based on sales comparisons.

(c) *Unsecured Portion of the Claim*: Any amount of a Class 4 claim that is deemed to be unsecured in accordance with Class 1 above shall be afforded the treatment set forth in Class 7 below, which shall be determined upon the filing of a timely proof of claim.

(d) *Principal Balance.* The principal balance of the Class 4 claim shall be the Allowed Secured Claim consisting of the last nine months of the HOA dues in the estimated amount of $468.00 ($52.00 x 9 months). The Debtor shall pay the allowed claim no later than 90 days after the entry of the confirmation order. Or such other amount as the court may determine.

(e) *Lien and Lien Release.* From and after the Confirmation Date, the Holder of the Class 4 Claim shall retain its Lien until it has received payment of $468.00 or the last nine months of dues. Upon the recording of the Order Confirming the Debtor's Plan shall be sufficient to release any HOA liens that have not been released. Should the class 4 claim holder fail to timely file a proof of claim, the class 4 claim holder shall not be entitled to any distributions and the lien shall be released. From and after the Confirmation Date, the Holder of the Class 4 wholly unsecured Claim shall be fully released. Recording of the Confirmation Order shall suffice to release the HOA Lien in the real property records of Clark County, Nevada recorded on April 7, 2020, as instrument number 202004070000551.

**Impairment and Voting:** Class 4 is impaired. Holders of the Class 4 claim are entitled to vote to accept or reject this Plan.

**Class 5. Unimpaired. Surrender Collateral**

This Class 5 claim consist of a Purchase Money Security Interest in favor of Homeclub Wholesale, Inc. against the Debtor's equipment.

(a) On the Effective Date, the Debtor will surrender the collateral for full satisfaction of the claim. Class 5 will have 60 days to recover its collateral. If collateral is not recovered and no arrangements have been made. The Debtor may dispose of the collateral.

**Impairment and Voting:** Class 5 is unimpaired. Holders of the Class 5 claim is not entitled to vote to accept or reject this Plan.

**Class 6 – Unimpaired**

This Class 6 claim consist of a Super-Priority Secured Claim in favor Republic Services, against the Debtor's rental property located at 11604 Azul Celeste Place, Las Vegas, Nevada 89138; APN: 137-35-416-061, which is secured by a super-priority lien pursuant to state statute.

(a) *Principal Balance.* The principal balance of the Class 6 claim shall be the Allowed Secured Lien Claim in the amount that is the value, which is $2,545.60.

(b) *Lien.* From and after the Confirmation Date, the Holder of the Class 6 Claim shall retain its Lien in the Collateral consistent state law until the Class 6 claim is repaid in accordance with the Plan.

(c) *Payment*. Within 180 days after the Effective date, the Debtor's members shall make contributions of new value to pay this claim in full. After payment all lien claims of Class 6 shall be released.

**Impairment and Voting:** Class 6 is unimpaired. Holders of the Class 6 claim are not entitled to vote to accept or reject this Plan.

The Class 1 Secured creditor, or its agents shall within 30 days provide the Debtor with an updated monthly mortgage statement, or account statements reflecting the correct balance, payment and any further upcoming payment due dates and proper escrow amounts, if any, consistent with the Plan following entry of the Confirmation Order, which shall be mailed to the debtor every month thereafter. The Debtor may take any actions under § 524(a) or (i) or bankruptcy Rule 9020 for failure to do so. Upon entry of the Confirmation Order all Notices of Defaults and Notices of Trustee's Sale shall be rescinded. Recording of the Confirmation Order shall suffice to rescind any Notice of Default and Notice of Trustee's Sale.

To the extent necessary, the Debtor's Plan shall, pursuant to Section 1123(b) of the Bankruptcy Code, provide for the revaluation of the Debtor's property in section 4.1, in accordance with the property's current market value immediately prior to final confirmation of the plan. If you are a secured creditor, your secured claim may be reduced in accordance with Section 506(a) of the Bankruptcy Code, as of the effective date of the Plan. If you disagree with the revaluation or the appraised amounts, you should object to the Plan

To the extent necessary, the Plan shall be treated as a motion and the Confirmation Order will constitute the Bankruptcy Court's finding and determination that the transactions reflected in the Plan are (1) in the best interests of the Debtor, its estate and all Holders of Claims and Equity Interests, (2) fair, equitable and reasonable, (3) made in good faith and (4) approved by the Bankruptcy Court pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rules 9014 and 9019, as each may be applicable

**4.2. Class 7 - General Unsecured Claims.**

Class 7 Claims consist of the General Unsecured Claims against the Debtor.

*Treatment:* Holders of Class 7 General Unsecured Claims on the Effective Date shall, in full satisfaction, settlement, release and exchange for such Allowed General Unsecured Claims, shall receive 1 payment of $5,944.81, in their pro rata share. All portions of allowed Class 7 unsecured claims that remain unpaid, and at the conclusion of the single payment required under this Plan (the "Plan Term"), will cease 6 months after the Effective Date and shall be forever discharged and rendered non-collectable against the Debtor. The Debtor's single Plan Payment under the Plan shall be $5,944.81, which shall be made from the members' new value contributions.

**Class 7 – Equity Interest of the Debtor**

(a) *Treatment.*

The Equity Interest of the Debtor are unimpaired by the Plan and conclusively deemed to have accepted the Plan, pursuant to Bankruptcy Code section 1126(f) to the extent the Debtor's members make the required contribution of to the general unsecured class $5,944.81. No solicitation is required. Additionally, the Debtor's members' will make the additional capital contributions for arrears of $194,740.02, on the effective date, Republic Services, HOA claims in Class 3 and 4, and tax claims of the IRS, and past due US Trustee claims for a total contribution of $194,740.02.

.

**4.2.1. Initial Distribution.** Each Creditor with an Allowed General Unsecured Claim as of the Initial Distribution Date will, on such date, be paid its Pro Rata share of the Initial Distribution Amount, which will be distributed within 60-180 days, after the effective date, or before in the amount of $5,944.81.

**4.2.2. Subsequent Quarterly Distributions.**

(a) On each subsequent Quarterly Distribution Date, all Creditors with Allowed General Unsecured Claims which were not, on the immediately preceding Initial Distribution Date or Quarterly Distribution Date, Allowed Claims, shall receive a Distribution of sufficient Available Cash to bring them into a Pro Rata position vis-a-vis all other Creditors with Allowed General Unsecured Claims.

(b) On each Quarterly Distribution Date, after giving effect to the Distributions to be made pursuant to the preceding paragraph (a), Reorganized Debtor shall distribute the Quarterly Payment, Pro Rata, to Creditors with Allowed General Unsecured Claims.

(c) Notwithstanding the preceding paragraph (b), to the extent that any remaining Allowed General Unsecured Claim is less than **$250.00 on a Quarterly Distribution Date**, Reorganized Debtor, in its sole discretion, may pay such Claim in full.

(d) On the Final Distribution Date, Reorganized Debtor shall distribute, Pro Rata, to Creditors with Allowed General Unsecured Claims, the Final Distribution. The Final Distribution Date shall be 6 months after the effective date.

**4.3. Retention of Defenses Regarding Claims.** Except as otherwise provided in (a) this Plan, and nothing shall affect Debtors rights and defenses, both legal and equitable, with respect to any Claims.

**4.4. Voting by Impaired Classes.** Members of Class 2 are impaired and entitled to vote to reject or accept this Plan.

**4.5. Disputed, Contingent and Unliquidated Claims and Interests.** Any Claim or Interest that has been or is hereafter listed in the Schedules as disputed, contingent, or unliquidated, and for which no Proof of Claim or Interest has been timely Filed by the Bar Date, is not considered Allowed and shall be expunged without further action by the Debtor and without any further notice to or action, order, or approval of the Bankruptcy Court.

**ARTICLE 5**

**ACCEPTANCE OR REJECTION OF THIS PLAN**

**5.1. Acceptance by an Impaired Class.** In accordance with Bankruptcy Code section 1126(c) and except as provided in Bankruptcy Code section 1126(e), an Impaired Class of Claims shall be deemed to have accepted this Plan if this Plan is accepted by the Holders of at least two-third (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

**5.2. Summary of Classes Voting on this Plan.**

(a) Under the Plan, the Voting Class are Class 2. Under the Plan, the non-voting classes are 1, 3, 4, 5, 6, 7 and 8.

**5.3. Elimination of Vacant Classes.** Any Class of Claims that is not occupied as of the date of the commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to Bankruptcy Code section 1129(a)(8).

**5.4. Tabulation of Votes.** The Proponents will tabulate all votes on this Plan for the purpose of determining whether this Plan satisfies Bankruptcy Code sections 1129(a)(8) and (10).

**5.5. Nonconsensual Confirmation.** If any Impaired Class of Claims entitled to vote shall not accept the Plan by the requisite statutory majorities provided in Bankruptcy Code section 1126(c), Proponents reserve the right to amend the Plan in accordance with Section 14.1 hereof or undertake to have the Bankruptcy Court confirm the Plan under Bankruptcy Code section 1129(b) or both. With respect to any Impaired Classes of Claims that are deemed to reject the Plan, Proponents shall request that the Bankruptcy Court confirm the plan under Bankruptcy Code section 1129(b).

**ARTICLE 6**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**6.1. *General Treatment.*** As of the Effective Date, the Debtor shall be deemed to have assumed each Assumed Contract and to have assigned such Assumed Contracts to the Reorganized Debtor or to a Secured Lender that is a transferee of a Property (as applicable) to which such Assumed Contracts relate. All Executory Contracts to which the Debtor is a party are hereby rejected as of and subject to the occurrence of the Effective Date, except for any Executory Contract that: (a) has been assumed or rejected pursuant to Final Order of the Bankruptcy Court; or (b) is an Assumed Contract. For purposes hereof, each Assumed Contract that relates to the use or occupancy of real property shall include (a) modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such Assumed Contract, and (b) contracts appurtenant to the premises listed in the Assumed Contracts, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vault, tunnel, or bridge agreements, or franchises,

and any other interests in real estate or rights in rem relating to such premises to the extent any of the foregoing are Executory Contracts, unless any of the foregoing agreements are specifically rejected.

The confirmation order shall constitute an order of the Bankruptcy Court approving such assumptions pursuant to sections 365 and 1123 of the Bankruptcy Code as of the effective date of this Plan.

In the event of a dispute regarding (i) the amount of any cure payment, (ii) the ability of the Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assigned or (iii) any other matter pertaining to assignment, the applicable cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a final order or orders resolving the dispute and approving the assumption.  If an objection to a cure amount is sustained by the Bankruptcy Court, the Debtors at their sole option may elect to reject such executory contract or unexpired lease in lieu of assuming and assigning it.

**6.2. *Rejection of Executory Contracts*.**

(a) Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute the approval, pursuant to Bankruptcy Code sections 365(a) and 1123(b)(2), of the rejection of all executory contracts and unexpired leases other than the Assumed Contracts.

(b) Any Holder of a Claim whose Claim arises from the rejection of an executory contract or unexpired lease with the Debtor shall have the rights of a Holder of a General Unsecured Claim and shall receive the treatment provided to Holders of Class 3 General Unsecured Claims as set forth in this Plan.

The Debtor rejects any purported lease/contract of the unknown squatter/tenant which is unlawfully occupying the property.

**6.3. *Filing of Rejection Claims*.** Any Person or Entity who believes they are entitled to assert a Claim against the Debtor by virtue of the rejection of an executory contract or unexpired lease pursuant to this Article 6 or a Final Order entered after the Confirmation Date, may File a Claim with the Clerk of the Bankruptcy Court not later than twenty (20) days after the date of any such rejection or such later time as may be set forth for the filing of such Claim in said Final Order. If such Claim is not so Filed, it shall be forever barred from assertion against the Debtor, Reorganized Debtor, and any Secured Lender that is a transferee of a Property. Nothing in this Section 6.2 shall affect the right of any party-in-interest to object to any Claim, which has been improperly Filed or not Filed on a timely basis.

**6.4. *Modifications, Amendments, Supplements, Restatements, or Other Agreements*.**

(a) Unless otherwise provided for in the Confirmation Order, each Assumed Contract that is assumed and assigned shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Assumed Contract, and all executory contracts and unexpired leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under this Plan.

(b) Modifications, amendments, supplements, and restatements to pre-petition executory contracts and unexpired leases that have been executed by the Debtors during the Chapter 11 Case shall not be deemed to alter the pre-petition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**6.5. *Reservation of Rights*.** Neither the exclusion nor inclusion of any contract or lease contained in this Plan, shall constitute an admission by the Debtors, the Reorganized Debtors, or a Secured Lender that is a transferee of a Property that any such contract or lease is in fact an executory contract or unexpired lease or that the Debtors, Reorganized Debtors, or a Secured Lender that is a transferee of a Property has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, the Reorganized Debtors and/or a Secured Lender that is a transferee of a Property shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

## ARTICLE 7

## MEANS FOR IMPLEMENTATION OF THE PLAN

**7.1. *Plan Implementation Occurring on the Effective Date*.** On the Effective Date, without any further action by Debtors or Reorganized Debtors, all of Debtors assets shall vest in Reorganized Debtor.

**7.2. *Source of Payments*.**

(a) On the Effective Date payments to Creditors' in Classes 1 and 7 shall be funded from the Debtor's rental income and equity interest holder new value member contributions should the rental income not be sufficient.

(b) Payments to Class 7 creditors required under the Plan will be funded by the Debtor's members as a single contribution of $5,944.81. This single payment shall be paid within 180 days from the entry of the confirmation order.

(c) The Debtor's members recently sold a property in Idaho – Seminole Ventures LLC [5 Tamarack Circle, Idaho City, Idaho 83631]. The buyer Idaho Holdings & Management LLC, Ray Ronquillo's balloon payment/maturity comes due on July 1, 2023. The cash from this note payable will fund the Plan. Additionally, Debtor's other LLC, TB Holdings LLC, has enough cash to make a contribution to fund the Plan, which it will do so

**7.3. *Reorganized Debtor*.** On the Effective Date (as more fully set forth in Article 13 of the Plan), without any further action, the Reorganized Debtor will be vested with all of the Property in Class 1 (except for Properties transferred to Secured Lenders pursuant to this Plan), free and clear of all Claims and Liens (except for Liens provided or authorized pursuant to this Plan in section 4.1). The Debtor may transfer any of its Real Property or sell the Property on an owner carry contract, which is subject to the only one deed of trust described in section 4.1 and in Class 1.

**7.4. *Effectiveness of the Loan Documents*.** On the Effective Date, the Loan Documents shall remain in full force and effect, save and expect that without any further action by Reorganized Debtor or Secured Lenders, all of the Loan Documents shall be deemed to have been amended as set forth in

Section 4.1 of this Plan. All amendments necessary to implement and effectuate the provisions of this Plan shall be deemed to have been made. All potential discrepancies or inconsistencies between the Loan Documents and the Plan shall be construed and resolved in favor of the effectuation and implementation of the provisions and intentions of the Plan.

**7.5. Post-Effective Date Management of Reorganized Debtor.** From and after the Effective Date, Reorganized Debtor may transfer all of the Reorganized Debtor's Real Property in its business discretion. The management of the Debtor will be managed by the Reorganized Debtor's members, which management may subsequently be modified to the extent provided by Reorganized Debtor's articles of organization, by-laws, operating agreement (as amended, supplemented, or modified). The Reorganized Debtor will be authorized to reserve up to one year's of mortgage payments, property taxes, insurance, advertising and maintenance reserves, and contingency reserves for all its Property, from any additional available future income and from the funds left over in the DIP account.

**7.6. Effectuation of Transactions.** On and after the Effective Date, the appropriate managers or members of Debtor are authorized to issue, execute, deliver, and consummate the transactions contemplated by or described in the Plan in the name of and on behalf of Reorganized Debtor without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, rule, or any requirements of further action, vote, or other approval or authorization by any Person.

**7.7. No Action Required.** As of the Effective Date: (i) the adoption, execution, delivery, and implementation or assignment of all contracts, leases, instruments, releases, and other agreements related to or contemplated by this Plan; and (ii) the other matters provided for under or in furtherance of this Plan involving action to be taken by or required of Debtors shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without further order of the Bankruptcy Court or any requirement of further action by the members or managers of Debtor. Recording of the Confirmation Order shall suffice to effectuate any transfer or release.

**7.8 Secured Lenders.** On or after the Effective Date (as applicable), and in accordance with the Confirmation Order, each of the Properties transferred to a Secured Lender pursuant to this Plan will be irrevocably and indefeasibly transferred and assigned (and the Estate's title to each of the Properties shall pass) to the applicable Secured Lender, free and clear of all Claims, Liens (other than Senior Liens) and interests of Creditors and interests of all Interest Holders in accordance with the applicable provisions of the Bankruptcy Code. Any Claims and Liens not provided for and/or specifically addressed under the Plan, including, but not limited to, Liens of record for Claims, which are disputed based upon such Claims being reflected in the Debtors books and records as having been paid and satisfied and for which no proof of claim has been filed, shall be deemed satisfied and released and shall be discharged of record.

**7.9. Assumption of Liabilities.** On the Effective Date, unless such Claims shall be paid on or prior to such date, Reorganized Debtor shall be deemed to have assumed any Claim that is an Administrative Claim, a Priority/Secured Tax Claim or a Priority Claim (including any such Claims that are Disputed Claims or with respect to which any applicable period for asserting a Claim has not expired).

**7.10. Good Faith and Non Avoidability.** The Confirmation Order shall, among other things, provide that: (i) the Debtors, the Reorganized Debtors, and the Secured Lenders have acted in good faith; (ii)

the Distributions and/or consideration received by the Reorganized Debtors, and the Secured Lenders shall not be subject to avoidance, turnover or disgorgement in any subsequent insolvency proceeding by any Person or Entity; (iii) the Liens securing the Refinanced Secured Loans constitute valid first priority Liens, subject only to any Permitted Encumbrances.

**7.11. Management.** Following the Effective Date, the Reorganized Debtor will be SYNTHESIS INDUSTRIAL HOLDINGS 1 LLC, which is managed by Christopher Craig and Cristina Robertson.

**7.12. Exemption from Certain Transfer Taxes and Further Transactions.** Pursuant to Section 1146 of the Bankruptcy Code: (i) the issuance, distribution, transfer, or exchange of Estate property; (ii) the creation, modification, consolidation, or recording of any deed of trust or other security interest, the securing of additional indebtedness by such means or by other means in furtherance of, or connection with this Plan or the Confirmation Order; (iii) the making, assignment, modification, or recording of any lease or sublease; or (iv) the making, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to the foregoing shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act or real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment and the appropriate state of local government officials or agents shall be, and hereby are, directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**7.13. Final Decree.** The Reorganized Debtor shall be allowed to file an Ex-Parte Motion for a final decree on or after the Effective Date once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of bankruptcy Procedure, the Debtor, or such other party as the Court shall designate in the Plan confirmation order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion. A final decree is expected to be filed by the debtor within one month after confirmation of the plan. Upon the entering of the Final Decree and the closing of the debtor's chapter 11 case the debtor will be allowed to close its debtor in possession account and file regular tax returns.

**7.14. Effectuating Documents, Further Transactions.** On and after the Effective Date, the Debtors are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan in the name of and on behalf of Debtor, as applicable, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to this Plan.

**7.15. Post Effective Date Fees and Expenses.**

(a) From and after the Effective Date, the Distribution Agent shall pay all Post Effective Date Fees from its rental income  without the necessity of any approval by the Bankruptcy Court.

## ARTICLE 8

## PROVISIONS CONCERNING PLAN DISTRIBUTIONS

**8.1. Distributions on Account of Claims Allowed as of the Effective Date.** Distributions under this Plan on account of Claims Allowed on or before the Effective Date shall be made on the Effective Date, or on the first date thereafter as is reasonably practicable.

**8.2. Distributions on Account of Claims Allowed After the Effective Date.**

*(a) Payments and Distributions on Disputed Administrative and Priority Claims.* In the event that there are Disputed Administrative Claims or Disputed Priority Claims requiring adjudication and resolution and such Claims have not become Allowed or Disallowed prior to the Effective Date, then the obligation to satisfy such Claims shall be from the Confirmation Funds which are held for same, but to the extent there are no available Confirmation Funds from which to pay such Claim, the obligation to satisfy such Claims will be assumed by Reorganized Debtor, subject to Allowance or Disallowance by the Bankruptcy Court. Except as otherwise provided in this Plan, or Final Order, any Disputed Administrative Claim or Disputed Priority Claim that becomes Allowed after the Effective Date shall be satisfied from the Confirmation Funds or performed by Reorganized Debtor in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice.

*(b) Special Rules for Distributions to Holders of Disputed Claims.* Except as otherwise provided in this Plan and except as otherwise agreed by the relevant parties: (i) no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order, and (ii) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any Distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order and the Claims have been Allowed.

**8.3. Manner of Payment Under this Plan.** Distributions of Cash to be made by the Distribution Agent pursuant to this Plan shall be made, at the discretion of the Distribution Agent, by check drawn on the Distribution Agent's bank account or by wire transfer from a domestic bank.

**8.4. Whole Dollars.** Any other provision of this Plan to the contrary notwithstanding, no payments of cents will be made. Whenever any payment of cents would otherwise be called for, the actual payment may reflect a rounding of such fraction to the nearest whole dollar (up or down).

**8.5. Unclaimed Property.** Any security, money, or other property remaining unclaimed at the expiration of the time allowed in a case under chapter 9, 11, or 12 of this title for the presentation of a security or the performance of any other act as a condition to participation in the distribution under any plan confirmed under section 943 (b), 1129, 1173, or 1225 of this title, as the case may be, becomes the property of the debtor or of the entity acquiring the assets of the debtor under the plan, as the case may be.

**8.6. Delivery of Distributions.**

*(a) Record Date for Distributions.* On the Distribution Record Date, the Claims Register shall be closed and any Person responsible for making Distributions shall be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date. Notwithstanding the foregoing, if a Claim is transferred twenty or fewer days before the Distribution Record Date, the Distribution Agent shall make Distributions to the

transferee only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

*(b) Distribution Agent.* The Distribution Agent shall make all Distributions required under this Plan. The Distribution Agent in this case is the Debtor's members.

*(c) Delivery of Distributions in General.* Except as otherwise provided in this Plan, and notwithstanding any authority to the contrary, Distributions to all Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Distribution Agent: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the signatory set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if Debtor has been notified in writing of a change of address); (c) at the addresses set forth in any written notices of address changes delivered to the Debtor after the date of any related Proof of Claim; (d) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Distribution Agent has not received a written notice of a change of address; or (e) on any counsel that has appeared in the Chapter 11 Case on the Holder's behalf. Except as otherwise provided in this Plan, Distributions under this Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the Distributions in the manner set forth in this Plan. Absent willful misconduct or gross negligence, Proponents, the Debtor, the Reorganized Debtor, or any Secured Lender that is a transferee of a Property, and Distribution Agent, as applicable, shall not incur any liability on account of any Distributions made under this Plan.

**8.7. Returned Payments and Distributions.**

(a) In the case of Payments and Distributions to the Holders of Allowed Claims that are returned or refused to the Reorganized Debtors' or Distribution Agent due to an incorrect or incomplete address, the Distribution Agent shall retain any such returned Distribution in a segregated account established by the Distribution Agent to keep track of any returned Distributions. Unless the Holder of the Allowed Claim relating to any such returned Distribution contacts the Distribution Agent (or its designee) within three (3) months from the date on which such Distribution was returned and provides the Distribution Agent (or its designee) with acceptable proof of identity and an accurate address, such Holder shall forfeit all rights thereto, and to any and all future Distributions or rights under this Plan. In such event, the Claim for which such Distributions was issued shall be treated as a Disallowed Claim and the Distribution on account of such Disallowed Claim shall promptly be distributed to the Reorganized Debtor.

(b)

**8.8. Disputed Distributions.** In the event of any dispute between or among Holders of Claims as to the right to any Holder of a Claim to receive or retain any Distribution to be made to such Holder under this Plan, the Distribution Agent, in lieu of making such Distribution to such Court or as the interested parties to such dispute may otherwise agree among themselves. Any such Holder who fails to raise such dispute by filing an appropriate request for relief with the Bankruptcy Court prior to the issuance of such disputed Distribution by the Distribution Agent shall be deemed to have forever waived any right to dispute such Distribution or to enjoin, impair or otherwise restrict the use of any such Distribution.

***8.9. Setoffs.*** The Distribution Agent may, but shall not be required to, set-off against any Distributions to be made pursuant to this Plan to a Holder of an Allowed Claim, Claims of any nature whatsoever that Debtor may have, or may have had, against such Holder that have not been previously released, but neither the failure to do so, nor the allowance of any Claim held by such Holder shall constitute a waiver or release by the Distribution Agent of any such Claim Debtor may have, or may have had, against such Holder.

***8.10. Withholding Taxes.*** The Distribution Agent shall be entitled to deduct any applicable federal or state withholding taxes from any payments made with respect to Allowed Claims, as appropriate, and shall otherwise comply with Bankruptcy Code section 346.

***8.11. Allocation of Distributions.*** Distributions on account of Allowed Claims shall, for tax purposes, be treated as allocated first to principal, and thereafter to interest only to the extent that the entire principal amount has been recovered, if applicable.

## ARTICLE 9

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

***9.1. Objection to and Resolution of Claims.*** Except as to applications for allowance of compensation and reimbursement of expenses under Bankruptcy Code sections 330, 331 and/or 503, the Reorganized Debtor shall, on and after the Effective Date, have the exclusive right to make and file objections to Claims ("Disputed Claims"). On and after the Effective Date, the Reorganized Debtor shall have the authority to compromise, settle, otherwise resolve or withdraw any objections to any Claims and compromise, settle or otherwise resolve Disputed Claims without approval of the Bankruptcy Court. Unless otherwise ordered by the Bankruptcy Court, the Debtor and, on and after the Effective Date, the Reorganized Debtor, shall file all objections to Claims that are the subject of proofs of Claim or requests for payment filed with the Bankruptcy Court (other than applications for allowances of compensation and reimbursement of expenses with respect to Professional Fee Claims) and serve such objections upon the Holder of the Claim as to which the objection is made as soon as is practicable, but in no event later than one (1) year after the Effective Date or such later date as may be approved by the Bankruptcy Court.

***9.2. Payments.*** Payments and Distributions to each Holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provision of this Plan with respect to the Class of Creditors to which the respective Holder of an Allowed Claim belongs. Without limiting the generality of the foregoing, the Debtor shall not be required to object to any Claim irrespective of whether such Claim is Allowed or Disputed, whether in whole or in part.

***9.3. Contingent Claims.*** Until such time as a contingent Claim or a contingent portion of an Allowed Claim becomes fixed or absolute or is disallowed, such Claim will be treated as a Disputed Claim for all purposes related to Distributions under the Plan. The Holder of a contingent Claim will only be entitled to a Distribution under the Plan when and if such contingent Claim becomes an Allowed Claim.

***9.4. Estimation of Claims.*** The Debtor, prior to the Effective Date, and the Reorganized Debtor, after the Effective Date, shall be permitted, at any time, to request that the Bankruptcy Court estimate any

contingent or unliquidated Claim pursuant to section Bankruptcy Code 502(c), regardless of whether the Debtor previously had objected to such Claim or whether the Bankruptcy Court had ruled on such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during any litigation concerning any objection to such Claim, including during the pendency of any appeal relating to such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If such estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor may elect to pursue any supplemental proceedings to object to the allowance of such Claim. The Plan shall be considered a motion to estimate claims and the confirmation order shall set forth the distribution of each claim whether filed or not filed.

**9.5. Reserve for Disputed Claims.** On and after the Effective Date, the Distribution Agent shall hold in segregated reserve accounts (the "Reserve"), Cash in an aggregate amount sufficient to make Distributions to each Holder of a Disputed Claim at the time distributions are made pursuant to the Plan in the amount that such Holder would have been entitled to receive if such Claim had been an Allowed Claim on the Effective Date. Nothing contained herein shall be deemed to entitle the Holder of a Disputed Claim to post-Petition Date interest on such Claim. Any funds remaining in the Reserve after all Distributions on account of Allowed Claims have been made shall be promptly distributed to Reorganized Debtor.

**9.6. Late-Filed Claims.** No Claim filed after the Bar Date or, as applicable, the Administrative Claim Bar Date, shall be allowed, and all such Claims are hereby disallowed in full. After the Bar Date or the Administrative Bar Date, as applicable, no Creditor shall be permitted to amend any claim to increase the claimed amount and any such amendment shall be disallowed to the extent of the late-filed increase in the claimed amount. Additionally, if the Plan is confirmed before the Bar Date, after the entry of the confirmation order all claims filed after its entry shall be disallowed except for the claims treated in the Plan.

## ARTICLE 10

### RESERVATION OF RIGHTS PENDING CONFIRMATION AND EFFECTIVE DATE

The Proponents reserve the right to revoke or withdraw this Plan prior to the Confirmation Date and to File subsequent plans of reorganization. If the Proponents revoke or withdraw this Plan, or if Confirmation of this Plan or the Effective Date does not ultimately occur, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption or rejection of executory contracts or unexpired leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (3) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims or Interests by or against the Debtor or any Person or Entity; (b) prejudice in any manner the rights of the Debtor or any other Person or Entity in any further proceedings involving the Debtor; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtor, the Proponents, or any other Person or Entity.

**10.2. No Admissions or Waiver.** Without limiting the generality of any similar provision in this Plan, notwithstanding anything in the Plan to the contrary, nothing contained in the Plan, or in the Disclosure Statement shall be deemed an admission by the Proponents or any Person or Entity with

respect to any matter set forth herein. If Confirmation of this Plan or the Effective Date does not ultimately occur, no statement contained in the Plan, or in the Disclosure Statement may be used or relied on in any manner in any suit, action, proceeding or controversy within or outside of the Chapter 11 Case against the Proponents. Without in any way limiting the provisions set forth in Section 10.1, the Proponents reserve any and all of their rights as against all Persons and Entities in the event Confirmation of this Plan or the Effective Date does not ultimately occur.

**10.3. Term of Bankruptcy Injunction or Stays.** All injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date unless the Bankruptcy Court shall order otherwise.

## ARTICLE 11

## CONDITIONS TO EFFECTIVE DATE

**11.1. Conditions to Occurrence of Effective Date.** Each of the following are conditions to be met on or before the Effective Date, which conditions must be satisfied or waived in writing by the Proponents:

(a) The Confirmation Order shall be entered by the Bankruptcy Court and shall have become a Final Order;

(b) The required amount of Confirmation Funds have been paid and turned over to the Distribution Agent for Distribution in accordance with this Plan;

(c) The Confirmation Order authorizes the assumption and assignment of all Assumed Contracts;

(d) To the extent Confirmation Funds are insufficient to satisfy the Allowed Administrative Claims and Allowed Priority Claims (other than Professional Fee claims, if any) in full, the Reorganized Debtor has assumed or will pay the remaining amounts unless otherwise agreed by the Holder of such Allowed Administrative and Allowed Priority Claims Claim, which are to be paid solely from the DIP Account;

(e) All Property that this Plan requires to be transferred to Secured Lenders have been transferred to the applicable Secured Lender by the Reorganized Debtor;

(f) All conditions precedent to the closing of any Refinanced Secured Loan Documents have been satisfied or waived in accordance with the terms hereof; and

(g) Any outstanding US Trustee Fees shall have been paid in full.

Any condition precedent for the occurrence of the Effective Date set forth in Section 10.1 of this Plan may be waived by the Proponents in their sole discretion, without notice, leave, or order of the Bankruptcy Court or any other formal action.

# ARTICLE 12

# RETENTION OF JURISDICTION

**12.1.** ***Retention of Jurisdiction.*** Except to the extent otherwise expressly set forth herein, the Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case following the Confirmation Date for the following purposes, it being expressly intended that such retention of jurisdiction shall in all cases hereafter set forth, extend to any actions or proceedings commenced prior or subsequent to the Confirmation Date and/or the Effective Date whether by the Debtor, the Proponents, the Reorganized Debtor or the parties specified herein:

(a) To hear and determine any objections to the allowance of Claims, including any objections by Reorganized Debtor with respect to any Claims which have been reinstated or assumed in accordance with the terms of this Plan;

(b) To determine any and all applications for compensation for any Professionals and similar fees to the extent made specifically subject to a hearing under this Plan and applicable provisions of the Bankruptcy Code;

(c) To determine any and all applications for the rejection or assumption and assignment of executory contracts or for the rejection or assumption and assignment, as the case may be, of unexpired leases to which the Debtor is a party or with respect to which it may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom;

(d) To modify this Plan pursuant to Bankruptcy Code section 1127 or to remedy any defect or omission or reconcile any inconsistency in the Confirmation Order to the extent authorized by the Bankruptcy Code;

(e) To hear and determine all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement of this Plan;

(f) To hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of this Bankruptcy Court entered in the Chapter 11 Case;

(g) To adjudicate all controversies concerning the classification of any Claim;

(h) To liquidate damages in connection with any disputed, contingent or unliquidated Claim;

(i) To adjudicate all Claims to a security or ownership interest in any of the Assets, or in any proceeds thereof,

(j) To adjudicate all Claims or controversies arising out of any purchases, sales or contracts made or undertaken by the Debtor;

(k) To determine all questions and disputes regarding recovery of and entitlement to any property of the Debtor, or in any proceeds thereof;

(l) To adjudicate all Causes of Action with respect to which the Debtor and/or the Reorganized Debtor are a party, whether or not such Claim or controversy is raised or filed before or after the Effective

Date;

(m) To determine issues and disputes concerning entitlement to Distributions to be made under and pursuant to this Plan;

(n) To enter any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor and/or the Reorganized Debtor, or the rights of any Person or Entity hereunder and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Bankruptcy Court may deem necessary or appropriate;

(o) To determine such other matters as may be provided for in the Confirmation Order and this Plan, or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(p) To enter a Final Decree closing the Chapter 11 Case;

(q) To enforce the provisions of any Administrative Claim Bar Date entered by the Bankruptcy Court;

(r) To make such orders as are necessary or appropriate to carry out the provisions of this Plan, including but not limited to orders interpreting, clarifying or enforcing the provisions thereof;

(s) To determine issues and disputes with respect to the Secured Loan Documents arising after the Effective Date; and

(t) Without limiting the generality of any of the foregoing, to hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 345, 505, and 1146.

**12.2. Jurisdiction Unaffected.** The occurrence of the Effective Date and/or the entry of a Final Decree shall not divest the Bankruptcy Court of any jurisdiction otherwise retained under this Article 12 or the Confirmation Order.

**12.3. Failure of Bankruptcy Court To Exercise Jurisdiction.** If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising under, arising in or related to the Bankruptcy Case, including any of the matters set forth in the Plan, the Plan shall not prohibit or limit the exercise of jurisdiction by any other court of competent jurisdiction with respect to such matter.

## ARTICLE 13

## EFFECT OF CONFIRMATION OF PLAN

**13.1. Discharge.**

(a) IN CONJUNCTION WITH BANKRUPTCY CODE SECTION 1141, EXCEPT AS OTHERWISE PROVIDED FOR HEREIN, THE RIGHTS AFFORDED HEREIN AND THE TREATMENT OF ALL CLAIMS AND EQUITY INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION, DISCHARGE AND RELEASE OF CLAIMS AND EQUITY INTERESTS OF ANY NATURE WHATSOEVER AGAINST THE DEBTOR, AND OF THE

ASSETS OR PROPERTIES OF THE ESTATE, INCLUDING ANY INTEREST ACCRUED ON SUCH CLAIMS FROM AND AFTER THE PETITION DATE AND ANY PROPERTIES TRANSFERRED TO SECURED LENDERS.

(b) THE DEBTOR WILL NOT BE DISCHARGED FROM ANY DEBT EXCEPTED FROM DISCHARGE UNDER SECTION 523 OF THE BANKRUPTCY CODE, EXCEPT AS PROVIDED IN RULE 4007(C) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE. THE DEBTORS SHALL BE DISCHARGED AND RELEASED, AND ANY CLAIM AVOIDED ANY DEBT THAT WAS SCHEDULED AND DISPUTED THAT FAILED TO TIMELY FILE A PROOF OF CLAIM.

(c) WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EXCEPT AS PROVIDED IN THE CONFIRMATION ORDER, CONFIRMATION DISCHARGES THE DEBTOR AND THE REORGANIZED DEBTOR FROM ALL CLAIMS, OR OTHER DEBTS THAT AROSE BEFORE THE EFFECTIVE DATE, AND ALL DEBTS OF THE KIND SPECIFIED IN SECTIONS 502(G), 502(H) OR 502(I) OF THE BANKRUPTCY CODE, WHETHER OR NOT: (X) A PROOF OF CLAIM BASED ON SUCH A DEBT HAS BEEN FILED, OR DEEMED TO HAVE BEEN FILED, UNDER BANKRUPTCY CODE SECTIONS 501 OR 1111(A); (Y) A CLAIM BASED ON SUCH DEBT IS ALLOWED UNDER BANKRUPTCY CODE SECTION 502 OF THE BANKRUPTCY CODE; OR (Z) THE HOLDER OF A CLAIM BASED ON SUCH DEBT HAS ACCEPTED THE PLAN.

(d) EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, (I) ON THE EFFECTIVE DATE, ALL CLAIMS AGAINST THE DEBTOR WHICH AROSE BEFORE THE EFFECTIVE DATE SHALL BE SATISFIED, DISCHARGED AND RELEASED IN FULL, (II) ON THE EFFECTIVE DATE, THE RIGHTS AND INTERESTS OF ALL HOLDERS OF OLD EQUITY INTERESTS SHALL BE TERMINATED, CANCELED AND OF NO FORCE AND EFFECT, AND (III) ALL PERSONS SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTOR, THE PROPONENTS, THE REORGANIZED DEBTOR, , OF THEIR SUCCESSORS, OR ANY OF THEIR ASSETS OR PROPERTIES, ANY OTHER OR FURTHER CLAIMS OR EQUITY INTERESTS BASED UPON ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE, AS WELL AS ANY DEBT OF A KIND SPECIFIED IN BANKRUPTCY CODE SECTIONS 502(G), 502(H), OR 502(I), IRRESPECTIVE OF WHETHER (X) A PROOF OF CLAIM BASED ON SUCH A DEBT HAS BEEN FILED, OR DEEMED TO HAVE BEEN FILED, UNDER BANKRUPTCY CODE SECTIONS 501 OR 1111(a), (Y) SUCH CLAIM IS ALLOWED UNDER BANKRUPTCY CODE SECTION 502, OR (Z) THE HOLDER OF THE CLAIM HAS ACCEPTED THE PLAN.

**13.2.** *Binding Effect of Plan/Injunction.*

(a) UPON THE EFFECTIVE DATE, BANKRUPTCY CODE SECTION 1141 SHALL BECOME APPLICABLE WITH RESPECT TO THE PLAN AND THE PLAN SHALL BE BINDING ON ALL PARTIES TO THE FULLEST EXTENT PERMITTED BY BANKRUPTCY CODE SECTION 1141(A). IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1141, ALL OF THE DEBTORS PROPERTY SHALL BE VESTED IN THE REORGANIZED DEBTOR FREE AND CLEAR OF ALL CLAIMS, LIENS AND INTERESTS OF CREDITORS, EXCEPT AS TO THOSE CREDITORS CLAIMS LISTED IN SECTION 4.1 OF THE PLAN. ALL PROPERTY

TRANSFERRED TO SECURED LENDERS PURSUANT TO THE PLAN SHALL BE VESTED IN THE RESPECTIVE SECURED LENDER FREE AND CLEAR OF ALL CLAIMS, LIENS AND INTERESTS OF CREDITORS.

(b)  UPON THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES SHALL BE PERMANENTLY ENJOINED BY THE PLAN FROM (I) COMMENCING OR CONTINUING ANY ACTION, EMPLOYING ANY PROCESS, ASSERTING OR UNDERTAKING AN ACT TO COLLECT, RECOVER, OR OFFSET, DIRECTLY OR INDIRECTLY, ANY CLAIM, RIGHTS, CAUSES OF ACTION, LIABILITIES, OR INTERESTS IN OR AGAINST ANY PROPERTY DISTRIBUTED OR TO BE DISTRIBUTED UNDER THE PLAN, OR VESTED IN THE REORGANIZED DEBTOR OR ANY SECURED LENDER, BASED UPON ANY ACT, OMISSION, TRANSACTION, OR OTHER ACTIVITY THAT OCCURRED BEFORE THE EFFECTIVE DATE, (II) CREATING, PERFECTING OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST ANY PROPERTY DISTRIBUTED OR TO BE DISTRIBUTED UNDER THE PLAN OTHER THAN AS PERMITTED UNDER THE PLAN, AND (III) WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ASSERTING ANY CLAIMS AGAINST THE REORGANIZED DEBTOR, , OR REORGANIZED DEBTOR PARENT BASED ON SUCCESSOR LIABILITY OR SIMILAR OR RELATED THEORY, EXCEPT TO THE EXTENT A PERSON OR ENTITY HOLDS AN ALLOWED CLAIM UNDER THE PLAN AND IS ENTITLED TO A DISTRIBUTION AND/OR LIEN UNDER THE PLAN IN ACCORDANCE WITH ITS TERMS, AND TO ENFORCE ITS RIGHTS TO DISTRIBUTION UNDER THE PLAN, AND MAY ENFORCE ITS RIGHTS POST-CONFIRMATION SHOULD THE DEBTOR DEFAULT ON ITS POST-EFFECTIVE DATE OBLIGATIONS

ON AND AFTER THE EFFECTIVE DATE, EACH HOLDER OF ANY CLAIM AGAINST OR INTEREST IN THE DEBTOR IS PERMANENTLY ENJOINED FROM TAKING OR PARTICIPATING IN ANY ACTION THAT WOULD INTERFERE OR OTHERWISE HINDER DEBTOR FROM IMPLEMENTING THE PLAN, THE CONFIRMATION ORDER OR ANY OPERATIVE DOCUMENTS IN ACCORDANCE WITH THE TERMS THEREOF. NOTWITHSTANDING ANY OTHER PROVISION IN THIS PLAN, THIS PLAN DOES NOT EXCHANGE, SATISFY, DISCHARGE OR RELEASE OF ANY DEBT THAT IS NONDISCHARGEABLE UNDER BANKRUPTCY CODE § 523, AND DOES NOT PRECLUDE THE HOLDER OF SUCH DEBT FROM COLLECTING, IN ANY WAY, SUCH NONDISCHARGEABLE DEBT FROM THE DEBTORS, THE REORGANIZED DEBTORS OR ANY THIRD PARTY.

**13.3. *Exculpation.*** None of the Releasees, nor any of their respective Representatives shall have or incur any liability to any Holder of a Claim against or Interest in the Debtor, or any other party-in-interest, or any of their Representatives, or any of their successors or assigns, for any act, omission, transaction or other occurrence in connection with, relating to, or arising out of the Chapter 11 Case, the pursuit of confirmation of this Plan, or the consummation of this Plan, except and solely to the extent such liability is based on fraud, gross negligence or willful misconduct. The Releasees shall be entitled to reasonably rely upon the advice of counsel with respect to any of their duties and responsibilities under this Plan or in the context of the Chapter 11 Case. No Holder of a Claim against or Interest in the Debtor, or any other party-in-interest, including their respective Representatives, shall have any right of action against the Releasees or any of their Representatives, for any act, omission, transaction or other occurrence in connection with, relating to, or arising out of, the Chapter

11 Case, the pursuit of confirmation of this Plan, the consummation of this Plan or the administration of this Plan, except to the extent arising from fraud. Nothing in this Section 11.3 shall be deemed an exculpation by any Releasor of any Releasee or any of its Representatives for any acts, omissions, transactions, events or other occurrences taking place after the Effective Date or an exculpation by Secured Lenders or any other party in connection with any obligations with respect to the Refinanced Secured Loans or any amounts owed under any Refinanced Secured Loan Documents (if and where applicable).

***13.4. Releases.*** As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Releasor will be deemed to release, waive and forever discharge all Released Liabilities against each Releasee and each Releasee's respective Representatives; provided, however, that, the releases provided in this Section 11.4 shall not constitute a release of any liability based on willful misconduct, gross negligence or fraud; provided, further, that nothing herein shall be deemed to constitute a release (a) by any Releasor of any Releasee or any of its Representatives for any acts, omissions, transactions, events or other occurrences taking place after the Effective Date, (b) by Secured Lenders in connection with any obligations with respect to the Refinanced Secured Loans or any amounts owed under the Refinanced Secured Loan Documents; (c) by Secured Lenders or other Creditors in connection with any personal guaranty of their Claims by any person other than the Debtor; and provided, further, that any party who is rightly included in the definition of Releasee that challenges the Plan or its implementation shall no longer be classified as a Releasee.

***13.5. Injunctions.***

(a) *Injunction Against Releasors.* All of the Releasors, along with any of their successors or assigns, are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind against the Releasees or any of their respective Representatives in respect of any Released Liabilities, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Releasees or any of their respective Representatives in respect of any Released Liabilities, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Releasees or any of their respective Representatives in respect of any Released Liabilities, or (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Releasees or any of their respective Representatives or against the property or interests in property of the Releasees or any of their respective Representatives, in respect of any Released Liabilities; provided, however, that nothing contained herein shall preclude such Releasors from exercising their rights pursuant to and consistent with the terms hereof and the contracts, instruments, releases and other agreements and documents delivered under or in connection with this Plan; provided, further, that nothing contained herein shall be deemed to enjoin any Releasor from taking any action against any Releasee or any of its Representatives based on the release exceptions contained in Section 13.4 of this Plan.

(b) *Injunction Protecting Exculpation of Releasees and Proponents.* All Holders of Claims against or Interests in the Debtor and any other parties-in-interest, along with any of their Representatives and any of their successors or assigns are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind against Releasees or any of their respective Representatives in respect of any potential liability for which exculpation is granted pursuant to Section 13.3 of this Plan, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against Releasees or any

of their respective Representatives in respect of any potential liability for which exculpation is granted pursuant to Section 13.3 of this Plan, (iii) creating, perfecting, or enforcing any encumbrance of any kind against Releasees or any of their respective Representatives in respect of any potential liability for which exculpation is granted pursuant to Section 13.3 of this Plan, or (iv) asserting any right of setoff, subrogation or recoupment of any kind against any Releasee or any of their respective Representatives or against the property or interests in property any Releasee or any of their respective Representatives, in respect of any potential liability for which exculpation is granted pursuant to Section 13.3 of this Plan; provided, however, that nothing contained herein shall preclude any Holder or other party-in-interest from exercising its rights pursuant to and consistent with the terms hereof and the contracts, instruments, releases and other agreements and documents delivered under or in connection with this Plan.

(c) *Injunction Against Interference With Plan*. Upon the Effective Date, all Holders of Claims against the Debtor and their respective Representatives and any of their successors or assigns shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

**13.6. Termination of Debt Instruments, Liens, Tax Liens & Notices of Default and Trustee's Sale.** On the Effective Date, all instruments evidencing indebtedness of the Debtor held by Holders of Claims that are Impaired by this Plan or have been paid in full pursuant thereto shall be deemed canceled or modified consistent with this Plan against the Debtor. And all Notices of Breach & Election to Sell and Notices of Trustee's Sale shall be canceled and/or rescinded against any of the Debtor's properties treated under the Plan. Recording of the Confirmation Order shall serve as a rescission of any such notice. More specifically, the Tax Lien of Nevada Department of Taxation recorded on December 1, 2014, as instrument number 20141201-0001108, and on July 11, 2017, as instrument number 20170711-0001175, shall be stripped off and of no force or effect. And HOA Lien in the real property records of Clark County, Nevada recorded on April 7, 2020, as instrument number 202004070000551. Any and all other liens of record not so stated in this Plan, and filed prior to the Petition date shall be released upon the recording of the confirmation order and deemed uncollectible. The Debtor may file an ex parte application identifying any liens a title company requires the debtor to do so for a release of those liens post confirmation.

**13.7. Judgments Void.** Any judgment obtained before or after the Effective Date that arose from a pre-petition debt, in any court other than the Bankruptcy Court shall be null and void as a determination of liability of the Debtors and/or the Reorganized Debtors with respect to any debt treated by the Plan, except any creditor treated under the Amended Plan may enforce its rights and pursue its remedies should the Debtor and/or Reorganized Debtor default post-confirmation after the post-effective date.

**13.8. Revesting of Assets in Reorganized Debtor.** Except as otherwise expressly provided in the Plan or in the Confirmation Order, on the Effective Date, but retroactive to the Confirmation Date, without any further action, the Reorganized Debtor will be vested with all of the property of the Estate, wherever situated, free and clear of all Claims, Liens (except for Liens provided or authorized pursuant to the Plan and Permitted Encumbrances in Section 4.1 of the Plan); provided, however, that the Properties to be transferred to Secured Lenders pursuant to the terms of the Plan shall be transferred to the applicable Secured Lender by the Reorganized Debtors. Without limiting the generality of the foregoing, on and after the Effective Date, the Reorganized Debtors shall be vested with all of the property of the Estate, wherever situated, free and clear of any Claims based on any form of successor liability or similar or related theory of liability. On and after the Effective Date, (i)

the Reorganized Debtor shall be free of any restrictions imposed by the Bankruptcy Code or Bankruptcy Court, may operate its business and may use, acquire or dispose of its assets (including the Properties) free of any restrictions imposed by the Bankruptcy Code and the Bankruptcy Rules and without supervision or approval by the Bankruptcy Court, other than the obligations set forth in the Plan, or the Confirmation Order. Without limiting the generality of the foregoing and except as otherwise expressly provided herein or in the Confirmation Order, any Causes of Action, will be preserved and retained solely for the Reorganized Debtors commencement, prosecution, use and benefit.

**13.9. Preservation of Causes of Action.** Pursuant to Bankruptcy Code section 1123(b), the Debtor as Reorganized Debtor shall retain and reserve the right to enforce all rights to commence and pursue Causes of Action whether arising prior to or after the Petition Dates, and whether pending as of or Filed after the Effective Date, in any court or other tribunal. Unless a Cause of Action is expressly waived, relinquished, released, compromised or settled in the Plan, or any Final Order, the Debtor on behalf of themselves and as the Reorganized Debtor expressly reserve all Causes of Action for later adjudication and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to any Causes of Action upon Confirmation or the Effective Date. No entity may rely on the absence of a specific reference in the Plan, or the Disclosure Statement to any Cause of Action against them as an indication that Proponents, the New Equity Investor, the Debtor, the Reorganized Debtor Parent, or the Reorganized Debtor, will not pursue any and all available Causes of Action against them. The Debtor and the Reorganized Debtor, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.

**13.10. Maintenance of Administrative Claim Status Post Discharge.** Notwithstanding any discharge granted to the Debtor, Allowed Administrative Claims shall maintain their administrative priority status under Bankruptcy Code section 507(a)(2) until paid in full.

**13.11. No Limitation on Effect of Confirmation.** Nothing contained in the Plan or the Disclosure Statement will limit, waive or restrict in any way the effect of Confirmation as set forth in Bankruptcy Code section 1141. Confirmation will bind the Debtor, all Creditors, Equity Interest Holders and other parties in interest to the provisions of the Plan, whether or not the Claim or Equity Interest of such Creditor or Equity Interest Holder is Impaired under the Plan and whether or not such Creditor or Equity Interest Holder has accepted the Plan and whether or not a proof of Claim or Equity Interest has been filed or deemed to have been filed under Bankruptcy Code sections 501 or 1111(a), or such Claim or Equity Interest is allowed under Bankruptcy Code section 502.

## ARTICLE 14

## MISCELLANEOUS PROVISIONS

**14.1. Modification of this Plan.**

11 U.S.C. § 1127 –

(a)      The proponent of a plan may modify such plan at any time before confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and

1123 of this title. After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan.

(b)     The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title.

(c)     The proponent of a modification shall comply with section 1125 of this title with respect to the plan as modified.

(d)     Any holder of a claim or interest that has accepted or rejected a plan is deemed to have accepted or rejected, as the case may be, such plan as modified, unless, within the time fixed by the court, such holder changes such holder's previous acceptance or rejection.

(e)     If the debtor is an individual, the plan may be modified at any time after confirmation of the plan but before the completion of payments under the plan, whether or not the plan has been substantially consummated, upon request of the debtor, the trustee, the United States trustee, or the holder of an allowed unsecured claim, to—

> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>
> (2) extend or reduce the time period for such payments; or
>
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim made other than under the plan.

(f)

> (1) Sections 1121 through 1128 and the requirements of section 1129 apply to any modification under subsection (e).

The plan, as modified, shall become the plan only after there has been disclosure under section 1125 as the court may direct, notice and a hearing, and such modification is approved.

***14.2. Notices.*** Except as otherwise set forth in Section 14.3 below, all notices, requests, elections or demands in connection with this Plan, including any change of address of any Holder of a Claim for the purposes of receiving any Distributions under this Plan, shall be in writing and shall be delivered personally or by facsimile, electronic mail or overnight courier (confirmed by first class mail or express mail) or mailed by first class mail. Such notice shall be deemed to have been given when received or, if mailed by first class mail, seven (7) days after the date of mailing, or if express mailed, the next Business Day following the date of mailing and addressed to the following:

(a) If to Debtor and/or the Proponents, to:

Steven L. Yarmy, Esq.
Nevada Bar No. 8733
7464 W Sahara Ave, STE 8
Las Vegas, Nevada 89117
(702) 586-3513
(702) 586-3690 FAX
sly@stevenyarmylaw.com

All notices and requests to Holders of Claims of any Class shall be sent to them at their known address. Any Holder of a Claim of any Class may designate in writing any other address for purposes of this Section 14.2, which designation shall be effective upon receipt.

**14.3. Limitation of Notice.** The Debtor shall give the following notice with regard to the following matters, which notice shall be deemed to be good and sufficient notice of such matters, with no requirement for any additional or further notice:

*(a) Notice of Entry of Confirmation Order.* Notice of the entry of the Confirmation Order shall be sufficient if mailed to all known Holders of Claims (which have not become Disallowed Claims) and Interests within five (5) Business Days of the entry of Confirmation Order.

*(b) Post-Confirmation Date Service List - Additional Persons Entitled to Notice.* Except as set forth in Section 14.2 hereof, from and after the date the Confirmation Order becomes a Final Order, notices of appearances and demands for service of process Filed with the Bankruptcy Court prior to such date shall no longer be effective, and no further notices, other than Notice of Confirmation Order, shall be required to be sent to such parties, unless such parties File a new notice of appearance and demand for service of process dated subsequent to the Effective Date, which subsequent notice and demand must be Filed with the Bankruptcy Court and served upon the Persons and Entities listed in Section 14.2 above.

*(c) Subordination.* Nothing in this Plan shall in any way be deemed to have Impaired, altered or otherwise affected the rights of the Debtor or Reorganized Debtor to enforce any right of subordination that may exist by agreement or otherwise, including under Bankruptcy Code section 510.

**14.4. Headings.** The headings used in this Plan are inserted for convenience only and neither constitutes a portion of this Plan nor in any manner affects the provisions of this Plan.

**14.5. Requisite Secured Lender's Approval.** Wherever the approval of a Secured Lender with respect to a Secured Loan or Refinanced Secured Loan is referred to anywhere in this Plan, the Person or Entity seeking such approval shall be entitled to direct the request for approval solely to that Secured Lender named herein with respect to such Secured Loan or Refinanced Secured Loan on behalf of other Holders of Claims with respect to such Secured Loan or Refinanced Secured Loan ("Related Secured Claim Holders") and such Secured Lender shall then be responsible for determining and communicating whether or not such approval has or has not been obtained. Any statement by such Secured Lender to any other Person or Entity concerning any consent or approval of the Secured

Lender and Related Secured Claim Holders required hereunder may be relied upon by such Person or Entity.

**14.6. Reserved.**

**14.7. Non-severability of Plan Provisions.** If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power, at the request of Proponents and subject to the consent of any party adversely affected thereby, to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, Impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to this Plan and may not be deleted or modified without the consent of Proponents and any other Person or Entity affected by such provision; and (c) non-severable and mutually dependent.

**14.8. Waiver or Estoppel.** Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with Debtor or its counsel, Investors or their counsel, or any other Entity, if such agreement was not disclosed in this Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

**14.9. Conflicts.**

(a) To the extent that any provision of the Disclosure Statement (other than any amendments to the Plan or any Secured Loan Documents), or any other order (other than the Confirmation Order) referenced in this Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any inconsistent with any provision of this Plan, this Plan shall govern and control, unless expressly set forth herein.

(b) From and after the Effective Date, to the extent that any provision of this Plan, the Disclosure Statement, or any other order (other than the Confirmation Order) referenced in this Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of any Secured Loan Document, then the Plan, Order Confirming and Secured Loan Document shall be read together, unless expressly set forth therein.

**14.10. Governing Law.** Except to the extent that the Bankruptcy Code or any other Federal law is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Nevada.

**14.11. Successors and Assigns.** The rights and obligations of any Person or Entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person or Entity.

**14.12. Good Faith.** Confirmation of the Plan will constitute a finding that the Plan has been proposed in good faith and in compliance with all applicable provisions of the Bankruptcy Code.

**14.13. Post Confirmation Conversion or Dismissal.** A creditor or party in interest may bring a motion to convert or dismiss the Chapter 11 Case under Bankruptcy Code section 1112(b), after the Plan is confirmed, if there is a default in performance of the Plan or if cause exists under Bankruptcy Code section 1112(b). If the Bankruptcy Court orders the case converted to chapter 7 after the Plan is confirmed, then all property that had been property of the Estate, and that has not been disbursed or distributed pursuant to the Plan, will revest in the chapter 7 estate, and the automatic stay will be re-imposed upon the re-vested property only to the extent that relief from stay was not previously granted by the Bankruptcy Court during this Chapter 11 Case. In addition, any Allowed Administrative Claims which are not paid on the Effective Date shall continue to be entitled to administrative priority, under Bankruptcy Code section 507(a)(1) in any such subsequent Chapter 7 case to which this case is converted.

**14.14. Post Confirmation Quarterly Fees.** In accordance with the requirements of Section 1129(a)(12) of the Bankruptcy Code and as a condition to confirmation of the Plan, Debtor will establish at the hearing on confirmation of the Plan either: (i) that all quarterly U.S. Trustee fees payable under 28 U.S.C. § 1930(a)(6) as of the date of the confirmation hearing have been paid by Debtor; or (ii) that all fees payable under 28 U.S.C. § 1930(a)(6) as of the Effective Date of the Plan will be paid by Debtor on the Effective Date. In accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and 28 U.S.C. § 1930(a)(6), fees payable under 28 U.S.C. § 1930(a)(6) shall continue to accrue post-confirmation and be paid timely throughout the pendency of the Chapter 11 Case by Reorganized Debtor until the Chapter 11 Case is closed, converted, or dismissed. Debtor and Reorganized Debtor shall comply with all post-confirmation reporting obligations in connection with the calculation and payment of fees due under 28 U.S.C. § 1930(a)(6). The Distribution Agent shall deduct the necessary amounts from the Plan Payment to pay all foregoing quarterly fees as they come due.

**14.15. Entire Agreement.** The Plan, as described herein, the Disclosure Statement and exhibits thereto, set forth the entire agreement and understanding of the parties hereto relating to the subject matter hereof and supersede all prior discussions and documents. No party hereto shall be bound by any terms, conditions, definitions, warrants, understandings or representations with respect to the subject matter hereof, other than as in expressly provided for herein or as may hereafter be agreed by the parties in writing.

Dated: July 5, 2023

/s/ Christopher Craig
Christopher Craig
Managing Member

/s/ Cristina Robertson
Cristina Robertson
Managing Member

## EXHIBIT A
## CLAIMS

| Proof of Claim No. | Creditor | Claim Amount | Secured | Unsecured | Priority |
|---|---|---|---|---|---|
| 1 | US Trustee | $ 1,500.00 | | | |
| 2 | IRS | $ 472.85 | $ - | $ 472.85 | |
| 3 | Republic Services | $ 2,545.60 | $ 2,486.50 | $ 59.10 | |
| 4 | US Bank as Truste for the RMAC Trust, Series 2016-CTT | $ 562,604.05 | $ 562,304.05 | $ - | |
| 5 | City of Las Vegas | $ 1,123.86 | | $ 1,123.86 | |
| | Casa Rosa HOA | $ 3,752.00 | $ 468.00 | $ 3,284.00 | |
| | Summerlin West Comm. Assoc. | $ 1,500.00 | $ 495.00 | $ 1,005.00 | |
| **Totals:** | | **$ 573,498.36** | **$ 565,753.55** | **$ 5,944.81** | **$ -** |

| | | | |
|---|---|---|---|
| **Debtor Members Contributions:** | **$194,740.02** | | |
| **Total Distribution Amount:** | | **$ 194,740.02** | |
| **Administrative Claims** | | $ 10,000.00 | |
| **Arrears** | | $ 173,845.71 | |
| **Casa Rosa** | | $ 468.00 | |
| **Summ. West Com. Ass.** | | $ 495.00 | |
| **Republic Serv.** | | $ 2,486.50 | |
| **US Trustee** | | $ 1,500.00 | |
| **Total Amount for Distribution to Allowed Unsecured Claims:** | | **$ 5,944.81** | |

## CLAIMS DISTRIBUTIONS

**Pro Rata Distribution % of Allowed Unsecured Claims:**

| Proof of Claim No. | Creditor | Unsecured Claim Amount | Percentage | Total Amount |
|---|---|---|---|---|
| | US Trustee | | 0.00% | $ - |
| | IRS | $ 472.85 | 7.95% | $ 472.85 |
| | Republic Services | $ 59.10 | 0.99% | $ 59.10 |
| | US Bank as Truste for the RMAC Trust, Series 2016-CTT | $ - | 0.00% | $ - |
| | City of Las Vegas | $ 1,123.86 | 18.90% | $ 1,123.86 |
| | Casa Rosa HOA | $ 3,284.00 | 55.24% | $ 3,284.00 |
| | Summerlin West Comm. Assoc. | $ 1,005.00 | 16.91% | $ 1,005.00 |
| | | | 0.00% | $ - |
| | | | 0.00% | $ - |
| | | | 0.00% | $ - |
| | | | 0.00% | $ - |
| | | | 0.00% | $ - |
| | | | 0.00% | $ - |
| | | | 0.00% | $ - |
| | | | 0.00% | $ - |
| | | | 0.00% | $ - |
| | | | 0.00% | $ - |
| | | | 0.00% | $ - |
| | | | 0.00% | $ - |
| | | | 0.00% | $ - |
| | | | 0.00% | $ - |
| | | | 0.00% | |
| | | | 0.00% | $ - |
| | | | 0.00% | $ - |
| | **Totals:** | **$ 5,944.81** | **100.000%** | **$ 5,944.81** |